COMMONWEALTH of Pennsylvania,
Appellee

v.

Ann Marie CLAFFEY, Appellant.

Superior Court of Pennsylvania.

Argued May 15, 2013.
Filed June 25, 2013.
Reargument Denied Aug. 29, 2013.

Brian J. Zeiger, Philadelphia, for appellant.

Jay W. Hannon, Asst. Dist. Atty., Media, for Commonwealth, appellee.

BEFORE: STEVENS, P.J., LAZARUS and COLVILLE *, JJ.

* Retired Senior Judge assigned to the Superior Court.

## OPINION BY COLVILLE, J.:

This case is a timely direct appeal from the judgment of sentence imposed on Appellant following her conviction for driving under the influence of a controlled substance ("DUI," 75 Pa.C.S.A. § 3802(d)(2)), failure to drive on the right side of a roadway ("failure to keep right," 75 Pa. C.S.A. § 3301), and careless driving (75 Pa.C.S.A. § 3714). Appellant contends the court erred by denying her pretrial motion to dismiss the prosecution for a violation of Pa.R.Crim.P. 600. She also argues the court should have dismissed the case because the Commonwealth improperly filed the criminal complaint, that complaint having been lodged after a prior complaint was dismissed. Finding Appellant's issues meritless, we affirm the judgment of sentence.

### Appealability and Timeliness

Although we have already indicated this appeal is from Appellant's judgment of sentence and is timely, we will elaborate somewhat on the issues of appealability and timeliness because there was, at one point in this case, some question about both matters and because both implicate our jurisdiction, *see Commonwealth v. Kennedy*, 583 Pa. 208, 876 A.2d 939, 943 (2005) (indicating appellate court lacks jurisdiction over non-appealable orders); *Commonwealth v. Wrecks*, 934 A.2d 1287, 1289 (Pa.Super.2007) (indicating this Court has no jurisdiction over untimely appeal). Appellant's notice of appeal, filed April 2, 2012, wrongly stated that she was appealing from her conviction of November 29, 2010. First, we note Appellant was not convicted on that date but, instead, was convicted by entry of verdict on December 6, 2011. Second, the final, appealable order for a defendant's direct appeal in a criminal case is the judgment of sentence,

not the conviction. *Commonwealth v. Borrero,* 692 A.2d 158, 159 (Pa.Super.1997). Thus, this appeal is not from Appellant's conviction but, rather, from her judgment of sentence, that judgment having been entered on January 23, 2012.

■ We also observe that, after filing timely post-sentence motions, Appellant lodged this appeal while those motions were pending. Doing so was improper. Pa.R.Crim.P. 720 cmt. Indeed, when post-sentence motions are filed, the judgment of sentence does not become final until those motions are decided. *Borrero,* 692 A.2d at 159.[1] Thus, because the motions were pending, Appellant's notice of appeal was premature. *Commonwealth v. Little,* 879 A.2d 293, 296 n. 6 (Pa.Super.2005). Because the notice of appeal was premature, we might be initially inclined to quash this matter. *Borrero,* 692 A.2d at 159–61.

■ Nevertheless, after lodging her appeal, Appellant withdrew her post-sentence motions and secured an order from the trial court memorializing the withdrawal pursuant to Pa.R.Crim.P. 720(A)(2)(c). When post-sentence motions are withdrawn and the trial court enters an order memorializing the withdrawal, any direct appeal must be filed within thirty days of the order. *Id.* In this case, because the memorialization order was entered on the docket, we will entertain this appeal as having been filed on the date of entry of that order. *Little,* 879 A.2d at 296 n. 6; Pa.R.A.P. 905(a)(5). Thus, we will regard this appeal as timely. *Little,* 879 A.2d at 296 n. 6; Pa.R.Crim.P. 720(A)(1), (2), 905(a)(5).

It would have been better practice for Appellant, having filed post-sentence mo-

tions and then having decided to withdraw them, to have proceeded with the withdrawal and to have obtained the court's memorialization order before filing her notice of appeal. Indeed, the confusion and imprecision arising from Appellant's filings and chosen course of conduct led us, earlier in this case, to issue a rule to show cause as to why this appeal should not be quashed. Because of the confused record, we posited multiple possible bases for the arguable impropriety of the appeal: (1) the appeal may have been taken when no appealable order was entered on the docket (*i.e.,* Appellant claimed to be appealing from a conviction rather than a judgment of sentence, or, alternatively, post-sentence motions were still pending, thus meaning that any judgment of sentence, if entered, had not yet become final); or (2) the appeal may have been late (*i.e.,* it was filed in April 2012 while Appellant purported, incorrectly, to appeal from a ruling of November 29, 2010). Nevertheless, as we have now clarified that this appeal is from the 2012 judgment of sentence and is timely, we will not quash this appeal. We will address its merits.

### Facts

The record reveals the following facts. On June 19, 2009, the Commonwealth filed a complaint alleging DUI, failure to keep right and careless driving against Appellant. On October 26, 2009, the case proceeded to a preliminary hearing. At that hearing, the Commonwealth presented evidence that included the following. Appellant, as the driver of her vehicle, was stopped in the middle of a road despite there being no stop sign or red light. A witness then saw Appellant swerve, first over the yellow road lines and then back, apparently traveling almost curb to curb.

---

1. Of course, when post-sentence motions are not filed, the judgment of sentence has become final and appealable, and any appeal therefrom must be lodged within thirty days of the imposition of sentence. *Id.;* Pa.R.A.P. 903(c)(3); Pa.R.Crim.P. 720(A)(3).

Appellant thereafter proceeded along the road, crossing over the yellow lines multiple times as she attempted to pass another vehicle. Police eventually located Appellant in her car which was, by then, stopped. An officer found Appellant to be lethargic and unable to perform field-sobriety testing successfully. Another officer had to hold Appellant up so that she would not fall. Police arrested her for DUI and transported her to a hospital where she underwent blood testing.

Also at the preliminary hearing, the Commonwealth introduced a report from a toxicologist revealing that a quantity of Carisoprodol, a prescription drug, and a metabolite of Carisoprodol (Meprobamate), were found in Appellant's blood during the aforementioned testing. The report indicated the concentrations of the substances in Appellant's blood were consistent with Appellant having recently used Carisoprodol. The report did not contain an opinion that the Carisoprodol/Meprobamate impaired Appellant's driving ability but, rather, stated that such an opinion could not be precluded. The report further stated that the blood results corroborated the officers' observations about Appellant's on-scene condition. More specifically, the pertinent part of the report read in this way:

> At the levels found in the case, it cannot be precluded that the Carisoprodol intake impaired [Appellant's] ability to safely operate a motor vehicle on the highway.
>
> Thus, in the absence of other similarly or more competent causes, and especially if the Carisoprodol was not therapeutically prescribed for this individual, these findings corroborate and support an arresting officer's observations concerning the exhibition of adverse psychoactive actions.

N.T., 10/26/09, at 27–28.

The expert did not testify at the preliminary hearing. His report was presented by one of the arresting officers. The magisterial district judge held the charges for court.

In January 2010, Appellant petitioned the Court of Common Pleas of Delaware County for a writ of *habeas corpus* on the grounds that the Commonwealth's proof at the preliminary hearing had not established that the controlled substances in Appellant's blood had impaired her ability to drive, operate and/or control her motor vehicle safely. More specifically, Appellant alleged that the Commonwealth needed to present, but did not present, an expert opinion indicating the Carisoprodol/Meprobamate caused her to be impaired. Given the lack of expert testimony, Appellant asserted the evidence was insufficient to prove DUI under 75 Pa. C.S.A. § 3802(d)(2).

On February 5, 2010, the court convened a hearing on the *habeas* petition. The transcript of the hearing reveals that, in the week prior to the hearing, the Commonwealth attempted to secure expert testimony regarding Appellant's ability to drive in light of the controlled substance(s) in her system. As a result of those efforts, the Commonwealth learned that, to secure such testimony, the Commonwealth needed additional factual information concerning Appellant's medical drug prescriptions. The transcript further reveals Appellant, through counsel, agreed to provide that information to the Commonwealth. The *habeas* court granted a continuance of the hearing until March 17, 2010.

Additionally, in the eventual hearing on Appellant's Rule 600 motion, it was revealed that the Commonwealth had, in fact, asked Dr. Richard Cohn to attend the *habeas* hearing on February 5, 2010, to testify as the Commonwealth's expert. However, Cohn failed to appear at the

February 5, 2010, hearing because he was testifying in Philadelphia County.

On March 17, 2010, because Appellant's counsel was unavailable, the *habeas* hearing was postponed until April 20, 2010.

On April 20, 2010, the Commonwealth indicated to the *habeas* court that Cohn intended to opine that Appellant was under the influence of Carisoprodol during the incident such that she was incapable of safely operating her car. Cohn, however, was not present. The *habeas* court postponed the proceeding until April 27, 2010. Though Cohn's testimony at the eventual Rule 600 hearing was not absolutely clear, that testimony supported the inference that Cohn's absence on April 20, 2010, was again due to the fact that he was testifying in court in Philadelphia County.

On April 27, 2010, Cohn was once more testifying as an expert witness in proceedings in Philadelphia County Court. He informed the Philadelphia County Court that he needed to leave Philadelphia at a certain time and go to the Delaware County Courthouse on the present case. The Philadelphia Court did not release Cohn until roughly thirty minutes beyond his intended departure time. Cohn nonetheless went to Delaware County, but he arrived at the courthouse some twenty minutes after the *habeas* hearing had concluded. During that hearing, the instant trial court granted *habeas* relief on the theory that the Commonwealth needed, but failed to present, expert testimony showing that the controlled substances found in Appellant's blood had impaired her driving ability. Although the need for expert testimony related only to the DUI charge, the court granted *habeas* as to all charges.

On June 30, 2010, the Commonwealth re-filed the charges by instituting the complaint now at issue. The case was scheduled for a preliminary hearing before the same magistrate who had presided at the first preliminary hearing. It appears that, on the date selected for the second preliminary hearing, the Commonwealth provided Appellant with a supplemented report from Cohn addressing the combined issue of Appellant's impairment and the cause thereof. Appellant waived her preliminary hearing. The charges were held for court.

On June 20, 2011, Appellant moved for dismissal under Pa.R.Crim.P. 600. She claimed that the period of 365 days in which the Commonwealth was required to bring her to trial, *see* Rule 600(A)(3), had expired because, in her view, the Rule 600 period was to be calculated from the filing of the first complaint, in June 2009, not from the second complaint, in June 2010.

The court scheduled a hearing that was eventually held on August 16, 2011. At the end of the hearing, the court indicated that, in light of the court's need to review the law and evidence submitted by the parties, and in light of the court's schedule, the court would take the matter under advisement. The court did so and, on November 4, 2011, the court entered an order denying Rule 600 relief.

Appellant later proceeded to trial and was convicted on all counts.[2] The court sentenced Appellant on January 23, 2012. She filed this appeal. Her primary argument is that the court was wrong to calculate the elapsed Rule 600 time from the filing of the second complaint and, instead, should have computed the time from the date the first complaint was filed. For the reasons that follow, she is incorrect.

**2.** The trial evidence included, *inter alia,* expert testimony from Cohn on the issue of

Appellant's impairment and causation thereof.

### Legal Principles

A number of legal principles are important in this case. Rule 600 provides, *inter alia*, that a defendant is entitled to have trial commence no later than 365 days after the complaint date. Pa.R.Crim.P. 600(A)(3). When computing the number of pretrial days attributable to the Commonwealth under this rule, certain delays are excluded, such as those caused by defense postponements, by express defense waivers of Rule 600, by the unavailability of the defendant or defense counsel, and/or by the fact that the defendant could not be located and apprehended. Pa.R.Crim.P. 600(C).

At any time before trial, a defendant may move for dismissal of the case if Rule 600 has, at that time, been violated. *Commonwealth v. Hyland*, 875 A.2d 1175, 1189 (Pa.Super.2005); Pa.R.Crim.P. 600(G). However, even when the defendant has not been tried within the aforesaid 365 days, and even when those days appear to be attributable to the Commonwealth, a Rule 600 motion shall be denied if the Commonwealth acted with due diligence in attempting to try the defendant timely and the circumstances occasioning the delay were beyond the Commonwealth's control. *Commonwealth v. Riley*, 19 A.3d 1146, 1148–49 (Pa.Super.2011); Pa. R.Crim.P. 600(G). Thus, if the Commonwealth acted with due diligence and the delay in question was beyond the Commonwealth's control, the delay is excusable. *Riley*, 19 A.3d at 1148–49.

In some circumstances, this Court has reasoned that, where an officer's absence from a hearing resulted from his being under subpoena to testify in a different court, that absence was beyond the Commonwealth's control. *Commonwealth v. Peterson*, 19 A.3d 1131, 1137–38 (Pa.Super.2011). As such, any delay resulting from that absence was excusable time, assuming the Commonwealth was otherwise diligent. *Id.*

Due diligence is a fact-specific concept to be determined on a case-by-case basis. *Riley*, 19 A.3d at 1149. It requires the Commonwealth to put forth a reasonable effort but does not demand perfect vigilance or punctilious care. *Commonwealth v. Rhodes*, 54 A.3d 908, 912 (Pa.Super.2012). The Commonwealth's duty to be diligent exists throughout all stages of a case. *Commonwealth v. Hawk*, 528 Pa. 329, 597 A.2d 1141, 1145 (1991).

In cases where the Commonwealth files a complaint, the complaint is withdrawn or dismissed, and the Commonwealth then re-files the charges in a subsequent complaint, there are additional principles to keep in mind. If, for example, the Commonwealth withdraws the first complaint in an attempt to avoid an imminent Rule 600 violation and then re-files the charges in hopes of circumventing that rule, then the Rule 600 time for the second complaint will be calculated from the filing of the first complaint. *Peterson*, 19 A.3d at 1141.

However, if the Commonwealth is diligent in prosecuting a complaint, and if the complaint is withdrawn or dismissed because of factors beyond the Commonwealth's control, then the Commonwealth, upon re-filing the charges in a second complaint, is entitled to have the time under Rule 600 run from the date of that second filing. *Id.* Accordingly, in cases of subsequent complaints, the law requires that Rule 600 courts evaluate whether the Commonwealth was diligent with respect to the initial complaint. *Rhodes*, 54 A.3d at 912.

Additionally, if the Commonwealth was diligent in prosecuting the first

complaint, the Commonwealth has no obligation under Rule 600 to re-file the charges within any particular time after the dismissal of the first complaint. *Peterson,* 19 A.3d at 1139–41. This principle arises from the fact that, while no complaint is pending, the language of Rule 600 is simply inapplicable. *Id.;* Pa.R.Crim.P. 600. Moreover, in the absence of pending criminal charges, the individual in question is free—at least in a legal sense—from the anxiety that arises from official public accusation, and, as such, part of the purpose behind Rule 600—limiting the period of such anxiety—is not implicated. *Peterson,* 19 A.3d at 1141. Naturally, the Commonwealth must comply with any applicable statute of limitations. *Id.* However, for purposes of Rule 600, the time between the dismissal of the first complaint and the filing of the second is irrelevant if the Commonwealth was diligent on the first matter. *Id.*

■ We also recall that any passage of time resulting from the filing of the Rule 600 motion itself (*e.g.,* time required by the court to schedule and conduct a hearing and/or time needed to take the case under advisement before ruling) is not attributable to the Commonwealth. *Riley,* 19 A.3d at 1148 n. 1.

■ This Court reviews a ruling under Rule 600 pursuant to an abuse-of-discretion standard. *Riley,* 19 A.3d at 1149. An abuse of discretion is not a mere error in judgment but, rather, involves bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law. *Id.* Additionally, when considering a Rule 600 claim, this Court must view the record facts in the light most favorable to the winner of the Rule 600 motion. *Rhodes,* 54 A.3d at 911. It is, of course, an appel-

lant's burden to persuade us the trial court erred and relief is due. *Commonwealth v. Wrecks,* 931 A.2d 717, 722 (Pa.Super.2007).

The DUI provision relevant to this case is:

**(d) Controlled substances.**—An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:

(2) The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(d)(2).

Also of relevance to this case are *Commonwealth v. Griffith,* 985 A.2d 230 (Pa.Super.2009) (*Griffith I* ), and *Commonwealth v. Griffith,* 613 Pa. 171, 32 A.3d 1231 (2011) (*Griffith II* ). Griffith was convicted of DUI in violation of 75 Pa. C.S.A. § 3802(d)(2). The trial evidence revealed, *inter alia,* the presence of multiple drugs, those drugs being prescription medications, in her blood.[3] On direct appeal, this Court observed that the Commonwealth had not introduced expert testimony demonstrating the drugs ingested by Griffith had impaired her ability to drive, operate and/or control her motor vehicle safely. We further reasoned that the effects of the drugs found in Griffith's system were not so widely known by lay people as to dispense with the need for expert testimony regarding the impact those drugs may have had on her. *Griffith I,* 985 A.2d at 236–37. As such, we found the evidence insufficient to support her conviction under 75 Pa.C.S.A. § 3802(d)(2). *Griffith I,* 985 A.2d at 236–37. In short, the effect of *Griffith I* was

---

**3.** Police found prescription Carisoprodol in Griffith's vehicle. Testing did not detect Cari-soprodol in her blood but did reveal the presence of Diazepam and Nordiazepam.

that, in a prosecution involving prescription medications and allegations of DUI under 75 Pa.C.S.A. § 3802(d)(2), the Commonwealth's evidence would be insufficient without expert testimony proving that the prescription medication caused the driver's impairment. *Griffith I*, 985 A.2d at 236–37. The *Griffith I* opinion was issued on July 2, 2009.

In *Griffith II*, the Supreme Court reversed our aforesaid decision. *Griffith II*, 32 A.3d at 1240. More particularly, the court held that expert testimony was not to be regarded as mandatory in every prosecution under 75 Pa.C.S.A. § 3802(d)(2) but, instead, the need for such testimony is to be evaluated on a case-by-case basis in light of all the other testimony. *Griffith II*, 32 A.3d at 1239–40. The *Griffith II* decision was issued on November 2, 2011.

 The Commonwealth's duty at a preliminary hearing is to present a *prima facie* case. *Commonwealth v. Ludwig*, 583 Pa. 6, 874 A.2d 623, 631 (2005). A *prima facie* case consists of evidence showing the existence of each material element of the charged offense(s) and probable cause to believe the defendant committed the crime(s) such that, if the evidence were presented at trial, the court would be warranted in submitting the case to the factfinder. *Commonwealth v. Landis*, 48 A.3d 432, 444 (Pa.Super.2012). If a defendant wishes to challenge the sufficiency of the evidence that was adduced during a preliminary hearing, the defendant may file a pretrial petition for a writ of *habeas corpus* in Common Pleas Court. *Id.* The Commonwealth's duty at the *habeas* stage is, once again, to present a *prima facie* case. *Id.*

### Analysis

 We now turn to Appellant's contention that the trial court should have computed the lapse of Rule 600 time from the filing of the first complaint. The Commonwealth presented its case on the first complaint at a preliminary hearing in October 2009. Appellant has not complained that there was any delay up to that point. At the preliminary hearing, the magistrate held the case for court. Thus, the Commonwealth secured a magisterial ruling that the Commonwealth had met its *prima facie* burden. The Commonwealth moved the case forward. The Commonwealth did not delay it. The case then proceeded past the preliminary hearing, through arraignment and toward trial until, of course, Appellant filed what would be her successful *habeas* petition.

We understand *Griffith I* was in effect at the time of the preliminary hearing in October 2009. In light of that opinion, a more thorough approach for the Commonwealth at the October 2009 hearing would have been to present an expert opinion regarding the cause of Appellant's impairment. Nonetheless, the Commonwealth presented the evidence it then possessed and, in so doing, obtained a favorable magisterial ruling which caused the case to progress. It was reasonable for the Commonwealth to rely on the magisterial judge's ruling at preliminary-hearing stage of the case, even though the Commonwealth knew or should have known that it would *eventually* need an expert opinion at trial. It was not incumbent on the Commonwealth to return to the magistrate, point out an arguable weakness in the *prima facie* case—a weakness on which the magistrate did not rely—and then somehow ask that the case move backward to a preliminary hearing. Instead, it was reasonable for the Commonwealth to rely on the magistrate's decision and to allow the case to proceed toward trial.

The Commonwealth's obligation to produce the additional expert evidence was

accelerated when Appellant filed her *habeas corpus* petition. When viewed most favorably to the Commonwealth, the record supports the determination that, after Appellant filed her *habeas* petition, the Commonwealth made reasonable efforts to secure expert testimony for the *habeas* hearings. Along these lines we note the following. While it might be argued the Commonwealth made less than perfect efforts prior to the first *habeas* hearing, the hearing of February 5, 2010, by not having secured all the factual, prescription-related information it needed for its expert to form an opinion, the record shows plainly that the expert, Cohn, simply could not have testified on February 5th because he was testifying elsewhere. Cohn's absence from all the subsequent *habeas* hearings was beyond the Commonwealth's control. Whether the Commonwealth, through perfect vigilance or punctilious care, might have secured a different expert to appear ready to testify at the *habeas* proceedings is a question that does not change our overall view that the Commonwealth put forth an effort that was at least reasonable.

In sum, we find no error in the court's conclusion that the Commonwealth prosecuted the first complaint with due diligence, even if not with diligence that was perfect. We observe also that the record does not show the Commonwealth's conduct was in any way designed to allow the first complaint to be dismissed in some effort to circumvent Rule 600. Consequently, we agree with the trial court that the time under Rule 600 must be calculated from the filing of the second complaint.

The second complaint was filed on June 30, 2010. Appellant was tried on the 518th day thereafter, on November 30, 2011. However, the record contains waivers of Rule 600 executed by Appellant for three periods: August 9, 2010 to September 13, 2010; September 13, 2010, to October 25, 2010; and November 8, 2010, to November 29, 2010. Those waivers resulted in excludable time of 98 days.

Also, the time from the date on which Appellant filed her Rule 600 motion, June 20, 2011, until the day the court entered its ruling on that motion, November 4, 2011, was not attributable to the · Commonwealth. The trial court opined that the passage of that time resulted from the court's need to schedule the hearing, to conduct the hearing and to take the matter under advisement before issuing its ruling. We see no error in the court's reasoning. The time from June 20th to November 4th totaled 137 days.

Additionally, Appellant requested a postponement of the trial from November 15, 2011, to November 28, 2011. That postponement accounts for 13 days of excludable time.

The aggregate excludable time from the foregoing periods is 248 days. Subtracting that aggregate from 518 days yields 270 days, an amount below the 365–day limit of Rule 600. As such, Appellant · was tried consistent with Rule 600.

■ Finally, Appellant presents a confused argument in which she seems to maintain that Pa.R.Crim.P. 544 required the Commonwealth to secure approval from the president judge of Delaware County before re-filing the charges that had been dismissed during the *habeas* proceedings.[4] She is wrong. When a court grants a *habeas* petition, the Common-

---

4. Rule 544 applies when a complaint is withdrawn or dismissed before or at a preliminary hearing, or when a grand jury declines to indict, not when a complaint is dismissed as part of *habeas* proceedings. *See* Pa.R.Crim.P. 544. Moreover, Rule 544 requires the attorney for the Commonwealth, not the president judge, to approve the re-filing of charges.

wealth may refile the charges and present additional evidence at a new preliminary hearing in order to correct the evidentiary deficits that existed in the prosecution of the first complaint. *Commonwealth v. Carbo*, 822 A.2d 60, 68–69 (Pa.Super.2003). Such is what the Commonwealth did in this case. Appellant has not persuaded us that approval from Common Pleas Court was necessary for the Commonwealth to file the second complaint.

Based on our foregoing analysis, we affirm the judgment of sentence.[5]

Judgment of sentence affirmed.

President Judge STEVENS concurs in the result.

Pa.R.Crim.P. 544(A). We recognize, of course, that approval from the president judge may be needed when the Commonwealth wishes to proceed with a preliminary hearing on re-filed charges before a magistrate different from the one who conducted the preliminary hearing on the first complaint. *See* Pa.R.Crim.P. 132, 544(B). The instant case does not involve such a circumstance.

5. Our grounds for affirmance differ somewhat from those of the trial court. *See Commonwealth v. West*, 937 A.2d 516, 531 (Pa.Super.2007) (indicating this Court may affirm on grounds different from those of the lower court). Even still, we have also affirmed a number of trial court findings and conclusions (*e.g.*, the factual findings regarding the cause of the *habeas* postponements; the legal conclusions that said cause was beyond the Commonwealth's control and that the Commonwealth was diligent when prosecuting the first complaint). We have accepted those findings and conclusions because Appellant has not convinced us that, in reaching them, the court acted with bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law.