J-S63018-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| CURTIS ROBERT MOYER | |
| Appellant | No. 254 MDA 2014 |

Appeal from the Judgment of Sentence July 29, 2013
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0008594-2012

BEFORE:  BOWES, J., PANELLA, J., and PLATT, J.[*]

MEMORANDUM BY PANELLA, J.                **FILED NOVEMBER 06, 2014**

Appellant, Curtis Robert Moyer, appeals from the judgment of sentence entered July 29, 2013, in the Court of Common Pleas of York County. We affirm.

Robert Holjes parked his car and entered a Giant supermarket. While shopping he was paged to see the store manager. The store manager took Holjes outside to the parking lot and showed him damage to his car. There was damage to the driver's side door, to the panel under that door, and to the hood of the car. The manager informed Holjes that the store had security cameras and permitted him to watch a segment of the surveillance

_____

[*] Retired Senior Judge assigned to the Superior Court.

video. Holjes left the store, but returned later to canvas the area for the suspect.

Eventually he located a man, later identified as Moyer, and asked him if he recognized his car. Moyer said he did, responding that he had earlier been sitting on it in the parking lot of the nearby supermarket. To Holjes, Moyer did not "seem completely coherent" and Holjes offered to drive him to the police station. N.T., Trial, 4/1-2/13, at 125. Moyer declined the ride to the police station, but agreed to drive to Giant where Holjes took Moyer to the store manager.

The manager called the police. To Officer Michael Bennage, Moyer seemed to be in "an altered state of reality," looked "disheveled," his pants were soaked, and he was holding a rolled newspaper up to his one eye. *Id*., at 131, 138. Officer Bennage asked Moyer why he thought the police were there and Moyer responded because of what he did to the car—that he sat on the car, repeatedly, and pushed a shopping cart into its driver's side door. Officer Bennage arrested Moyer.

The police never obtained the security camera footage. Officer Bennage was under the impression that another officer at the scene, Officer William Buzzard, requested the footage from the store. When the footage failed to arrive at the police department, Officer Bennage never followed up with the store, and the loss prevention officer at the store never contacted the police department. Officer Buzzard acknowledged that there was a

failure to request the footage due to a miscommunication between him, the police department and the store, but that when he left the store that night he thought someone had requested the footage. He explained:

> Within our police department, we have a system of checks and balances to make sure that that's followed up with [i.e., obtaining the footage], and I do take responsibility for not having the video. It was a – an error on my part that I didn't get it. I was under the impression I was going to get it, and the system of checks and balances that we used also failed, and we just don't have it.

*Id.*, at 141. The footage, stored on a 30-day loop, was eventually copied over.

Prior to trial, with the surveillance footage irretrievably lost, the Commonwealth filed a motion *in limine* seeking to admit oral testimony as to what Officer Buzzard and the store manager observed on the footage. The trial court held a hearing on the matter and ruled, citing Rule 1004 of the Pennsylvania Rules of Evidence, that it would permit the testimony as the Commonwealth did not act in bad faith and the footage was irretrievably lost.

The matter proceed to a jury trial. Officer Buzzard and the store manager testified as to what they observed on the surveillance footage, and the jury convicted Moyer of criminal mischief and found him not guilty of public drunkenness. The trial court sentenced Moyer to time served to 23 months' incarceration.

Moyer filed a timely post-sentence motion, and then a notice of appeal on February 6, 2014. On May 14, 2014, this Court ordered Moyer to show cause why this appeal should not be dismissed. On May 21, 2014, Moyer filed an answer indicating he had filed a *praecipe* in the trial court for entry of an order denying the post-sentence motion by operation of law. On the same day, the trial court entered an order denying the post-sentence motion by operation of law.

Preliminarily, we must first determine whether this appeal is properly before us. Rule 905 of the Pennsylvania Rules of Appellate Procedure provides, that "[a] notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof." Pa.R.A.P. 905(a)(5).

Before entry of the May 21, 2014 order denying Moyer's post-sentence motion by operation of law, his February 6, 2014 notice of appeal would have been premature. ***See Commonwealth v. Claffey***, 80 A.3d 780, 783 (Pa. Super. 2013) (appeal filed while timely post-sentence motions are pending may be premature). ***See also*** Pa.R.Crim.P. 720, Note. Because the trial court subsequently entered the final order, however, we will treat the notice of appeal as filed on May 21, 2014. We proceed to the merits.

On appeal, Moyer maintains that the trial court erred in not applying Rule 1002 of the Pennsylvania Rules of Evidence, commonly known as the Best Evidence Rule. ***See*** Appellant's Brief, at 4.

Our standard of review is as follows.

> In evaluating the denial or grant of a motion *in limine,* our standard of review is well-settled. When ruling on a trial court's decision to grant or deny a motion *in limine,* we apply an evidentiary abuse of discretion standard of review. A trial court has broad discretion to determine whether evidence is admissible, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous. If the evidentiary question is purely one of law, our review is plenary.

***Commonwealth v. Belani***, ___ A.3d ___, ___, 2014 WL 4748045, *3 (Pa. Super., filed September 25, 2014) (citations and quotation marks omitted).

The Best Evidence Rule provides that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules, other rules prescribed by the Supreme Court, or a statute provides otherwise." Pa.R.E. 1002. Rule 1004, which the trial court relied on, is a rule that provides otherwise. That rule states that "[a]n original is not required and other evidence of the content of a writing, recording, or photograph is admissible if: (a) all the originals are lost or destroyed, and not by the proponent acting in bad faith[.]" Pa.R.E. 1004(a).

The trial court found that secondary evidence was admissible, under Rule 1004, as the surveillance footage was irretrievably lost and the Commonwealth did not act in bad faith. It is undisputed that the surveillance

footage is irretrievably lost. The admission of the secondary evidence turns on whether the Commonwealth, through the police, acted in bad faith.[1]

"Bad faith" is defined as "[d]ishonesty of belief or purpose[.]" BLACK'S LAW DICTIONARY 149 (8th ed. 2004). The testimony established that the police simply failed to timely request the footage. As Officer Buzzard explained it, "the system of checks and balances failed." The trial court found that the Commonwealth did not act in bad faith. We agree. This is negligence, not bad faith. **See**, **e.g.**, **Montoya v. Romero**, 956 F.Supp.2d 1268, 1280 (D.N.M. 2013) ("[N]egligent destruction of the original or the possibility that the proponent tampered with the secondary evidence is likely insufficient for bad faith—the purposeful destruction or withholding of original[s] ... and the fabrication of secondary evidence will support a finding of bad faith.") (internal quotation marks omitted).[2]

Unfortunately, this negligence led to the destruction of the evidence. But as the Commonwealth did not act in bad faith we cannot find that the trial court abused its discretion in admitting the secondary evidence in the

_____

[1] Moyer relies heavily on **Commonwealth v. Ware**, 623 A.2d 355 (Pa. Super. 1993), which dealt solely with the application of the old common law Best Evidence Rule and no exceptions thereto. The Best Evidence Rule was codified in the Rules of Evidence in 1998 and while the "rule corresponds to the common law," Pa.R.E. 1002 Comment, also codified was Rule 1004, which specifically provides for the admissibility of other secondary evidence. **Ware** is simply inapposite.

[2] "This rule is identical to F.R.E. 1004." Pa.R.E. 1004 Comment.

form of the testimony of Officer Buzzard and the store manager. ***See*** 1 WEST'S PA. PRAC., EVIDENCE § 1004-1 (4th ed.) ("If presentation of the original is excused under this rule, the proffering party may offer any available evidence of the content of the original."); ***United States v. Ross***, 33 F.3d 1507, 1513 (CA 11 1994) ("Once the terms of Rule 1004 are satisfied, the party seeking to prove the contents of the recording—here, the government—may do so by any kind of secondary evidence.").[3]

Judgment of sentence affirmed.

Judge Bowes joins in the memorandum.

Judge Platt concurs in the result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/6/2014

_____

[3] Moyer argues, "[w]ithout the video there was no effective way for the Commonwealth to establish Moyer's intent." Appellant's Brief, at 12. But there was. That evidence came from the secondary evidence of the testimony of Officer Buzzard and the store manager explaining what they observed in the video. ***See***, ***e.g.***, N.T., Trial, 4/1-2/13, at 148 (store manager noting that Moyer laid on the hood of the car and took a shopping cart and "then pushed [it] into the yellow Honda[]"); ***id***., at 156 (Officer Buzzard noting that Moyer "reared back and shoved the cart forcefully into the car[]"). Moyer had the opportunity to cross-examine both of these witnesses.