J-S71016-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| TYSHAWN PLOWDEN, | |
| Appellee | No. 143 WDA 2015 |

Appeal from the Order January 6, 2015
In the Court of Common Pleas of Cambria County
Criminal Division at No(s): CP-11-CR-0002528-2013

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN, and OTT, JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED APRIL 08, 2016**

Appellant, the Commonwealth of Pennsylvania ("the Commonwealth"), appeals from the January 6, 2015 order granting Tyshawn Plowden's ("Plowden") Pa.R.Crim.P. 600 motion to dismiss and dismissing the charges against Plowden with prejudice.  After careful review, we affirm.

The trial court summarized the relevant procedural history, as follows:

> The parties have stipulated, in accordance with the record, that the Rule 600 time limits expired on December 27, 2014.  A review of the record reveals that on June 9, 2014, defendant filed a Petition for Nominal Bail Pursuant to Rule 600, and therein alleged that the 180-day time period for bringing him to trial expired on June 9, 2014.  On June 19, 2014, the Honorable Gerard Long of this [c]ourt granted defendant's Petition and set bond at $1.00.  On July 11, 2014, defendant was released from the Cambria County Prison and was extradited to the State of New York, following an extradition hearing on July 3, 2014.
>
> At the January 5, 2015 hearing [on the Rule 600 motion], the Commonwealth offered a written log and oral testimony from Detective Lia DeMarco relative to the Commonwealth's efforts to

secure defendant from the State of New York from July 2014 to present. *See* 1/5/15 Com. Exhibit A. At [the] hearing, Detective DeMarco testified, in response to questioning by the Court, that when the Cambria County Prison, in July 2014, inquired with the Commonwealth as to whether defendant could be extradited to the State of New York, the Commonwealth did not object to the extradition. N.T. 1/5/15 at p. 24. The Detective also admitted that prior to [Plowden's] release from the Cambria County Prison, no one scrutinized the charges . . . pending in Cambria County. N.T. 1/5/15 at p. 24. However, she further testified that since this case, the Commonwealth's protocol has changed. N.T. 1/5/15 at pp. 24-25. Additionally, counsel for the Commonwealth freely admitted that the Commonwealth should have known that there were charges pending against defendant, should have more closely taken action prior to his release to the State of New York, and are now attempting to rectify the errors. N.T. 1/5/15 at pp. 29-30.

Testimony was also presented at the January 5, 2015 hearing that the Commonwealth started proceeding pursuant to the Interstate Agreement on Detainers ("IAD") on September 24, 2014. N.T. 1/5/15 at p. 40. However formal written demand was not filed until October 9, 2014. *Id*. Thereafter, on December 12, 2014, as a "backup" plan, the Commonwealth also began proceedings pursuant to the Uniform Extradition Act, as Detective DeMarco learned from the State of New York that she needed to obtain a governor's warrant from Harrisburg. N.T. 1/5/15 at pp. 41-42.

On December 4, 2014, the last scheduled Jury Selection date prior to the Rule 600 run date of December 27, 2014, the Court specially set another Jury Selection date of December 16, 2014 to accommodate the Rule 600 time frame. However, defendant was not present on either December 4th or December 16th, given that he was incarcerated in New York. In fact, as of the January 5, 2015 hearing date, the defendant had still not been returned to Cambria County, but his trial date was set for January 8, 2015, and the Cambria County Sheriff's Office had made arrangements to transport defendant from upstate New York to Cambria County on January 7, 2015.

Trial Court Opinion, 3/9/15, at 3–4. Based upon these facts, the trial court

granted Plowden's Rule 600 motion and dismissed the criminal charges

pending against him with prejudice. The trial court also denied as moot Plowden's objection to the court conducting the January 5, 2015 hearing in his absence. Trial Court Order, 1/6/15, at unnumbered 2.

The Commonwealth raises a single issue for our consideration on appeal:

> Whether the trial court erred when it granted [Plowden's] motion to dismiss with prejudice pursuant to Rule of Criminal Procedure 600(D)(1) when the Commonwealth clearly exercised due diligence in timely prosecuting [Plowden].

Commonwealth's Brief at 4.[1]

In evaluating a Rule 600 issue:

> our standard of review of a trial court's decision is whether the trial court abused its discretion. Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.
>
> The proper scope of review is limited to the evidence on the record of the Rule [600] evidentiary hearing, and the findings of the [trial] court. An appellate court must view the facts in the light most favorable to the prevailing party. Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule [600]. Rule [600] serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those

---

[1] Plowden did not file an appellate brief in this matter.

contemplating it. However, the administrative mandate of Rule [600] was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule [600] must be construed in a manner consistent with society's right to punish and deter crime. In considering [these] matters . . . courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well.

*Commonwealth v. Horne*, 89 A.3d 277, 283–284 (Pa. Super. 2014)

(quoting *Commonwealth v. Ramos*, 936 A.2d 1097, 1100 (Pa. Super.

2007) (*en banc*)).

In pertinent part, Rule 600 provides as follows:

(A) Commencement of Trial; Time for Trial

* * *

(2) Trial shall commence within the following time periods.

(a) Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed.

* * *

(C) Computation of Time

(1) For purposes of paragraph (A), periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation.

(2) For purposes of paragraph (B), only periods of delay caused by the defendant shall be excluded from the computation of the

length of time of any pretrial incarceration. Any other periods of delay shall be included in the computation.

(D) Remedies

(1) When a defendant has not been brought to trial within the time periods set forth in paragraph (A), at any time before trial, the defendant's attorney, or the defendant if unrepresented, may file a written motion requesting that the charges be dismissed with prejudice on the ground that this rule has been violated. A copy of the motion shall be served on the attorney for the Commonwealth concurrently with filing. The judge shall conduct a hearing on the motion.

Pa.R.Crim.P. 600 (A)(2)(a), (C)(1) and (2), and (D)(1).

This Court has outlined the requirements for the calculation of the relevant Rule 600 time period in the following manner:

The first step in determining whether a technical violation of Rule 600 has occurred is to calculate the "mechanical run date." *Commonwealth v. Aaron*, 804 A.2d 39, 42 (Pa. Super. 2002). The mechanical run date is the date by which the trial must commence under Rule 600. *Id*. It is calculated by ascertaining the number of days in which the Commonwealth must commence trial under Rule 600 and counting from the date on which the criminal complaint was filed. *Id*. The mechanical run date can be modified or extended by adding any periods of time in which the defendant causes delay. *Id*. Once the mechanical run date is modified accordingly, it then becomes an "adjusted run date." *Id*.

Rule 600 takes into account both "excludable time" and "excusable delay." *Commonwealth v. Hunt*, 858 A.2d 1234, 1241 (Pa. Super. 2004). "Excludable time" is defined in Rule 600(C) as the period of time between the filing of the written complaint and the defendant's arrest, provided that the defendant could not be apprehended because his whereabouts [were] unknown and could not be determined by due diligence; any period of time for which the defendant expressly waives Rule 600; and/or such period of delay at any stage of the proceedings as results from: (a) the unavailability of the defendant or the defendant's attorney; and/or (b) any continuance granted at the request of the defendant or the defendant's attorney. *Id*. (citing

- 5 -

Pa.R.Crim.P. 600(C)). The "due diligence" required under Rule 600(C)(1) pertains to the Commonwealth's efforts to apprehend the defendant. *Id*. at 1241 n.10. The other aspects of Rule 600(C) defining "excludable time" do not require a showing of due diligence by the Commonwealth. *Id*. "Excusable delay" is not expressly defined in Rule 600, but the legal construct takes into account delays which occur as a result of circumstances beyond the Commonwealth's control and despite its due diligence. *See id*. at 1241-42 (explaining manner in which excludable time, excusable delay and due diligence are to be determined); *see also DeBlase*, 665 A.2d at 431 (discussing excludable time and excusable delay).

*Commonwealth v. Murray*, 879 A.2d 309, 313 (Pa. Super. 2005) (internal

citations modified).

With regard to the due diligence analysis in the case *sub judice*, the

trial court concluded the following:

[I]t is clear that once defendant was granted nominal bond on June 19, 2014, the Commonwealth was on notice that Rule 600 would again be violated in 180 days, absent any proper defense continuances. The record also reveals that, despite having knowledge of New York's extradition proceedings, at no time did the Commonwealth request a stay from extradition. In fact, the Commonwealth waited until October 9, 2014 to file any formal written documents to initiate defendant's return. Again, as of January 5, 2015, the Commonwealth still had not transported defendant for trial.

Accordingly, we find that the Commonwealth did not act with due diligence in procuring defendant's person for trial, and that the circumstances occasioning the delay in trial were not beyond the Commonwealth's control. Consistent with the aforesaid, and in consideration of the entire record, the appeal should be dismissed.

Trial Court Opinion, 3/9/15, at 4–5.

The Commonwealth's position on appeal is that the trial court's

decision to grant Plowden's Rule 600 motion was reasoned primarily by the

trial court's disapproval of the Commonwealth's initial failure to contest Plowden's extradition to New York in July of 2014. Despite acknowledging certain of its missteps regarding Plowden's extradition to New York and the delay in initiating detainer proceedings, the Commonwealth asserts that it should have been accorded at least twelve more days of excusable delay relative to its diligent efforts to transport Plowden from New York for trial. The Commonwealth also argues that Plowden's objection to the extradition proceedings constitutes excludable time which should have factored into the trial court's Rule 600 calculation.

Our review of the certified record and the transcript from the Rule 600 hearing reveals that Detective Lia DeMarco, of the Cambria County District Attorney's Office, who was responsible for extradition requests, detailed her efforts to secure Plowden's return from New York. N.T., 1/5/15, at 10, 14–28; *see also* Commonwealth's Exhibit A, 1/6/15, at unnumbered 1–3. Detective DeMarco acknowledged that the Commonwealth was not aware of criminal charges pending in Cambria County against Plowden and did not object to Plowden's extradition to New York in July of 2014. N.T., 1/5/15, at 10, 13. Detective DeMarco then recounted that beginning in October of 2014, she prepared and transmitted the necessary paperwork to New York to commence proceedings under the Interstate Agreement on Detainers, 42 Pa.C.S. § 9101, *et seq.* ("IAD"). *Id*. at 40. However, according to the detective, rather than conducting an IAD hearing, the New York authorities

instead held an extradition hearing. On December 11, 2014, Plowden refused to waive extradition. *Id*. at 20–21. The next day, on instruction from the state of New York, Detective DeMarco initiated proceedings under the Uniform Criminal Extradition Act, 42 Pa.C.S. § 9121, *et seq*. ("UCEA"), which necessitated procuring a governor's warrant from the Commonwealth of Pennsylvania.[2] *Id*. at 41. On December 12, 2014, Detective DeMarco forwarded the request for the governor's warrant to the appropriate office in Harrisburg. *Id*. At this point, Detective DeMarco's narration of the ensuing procedures became rather vague.[3] What we glean from the remainder of Detective DeMarco's testimony is that, despite the commencement of the

_____

[2] Section 9123 of the UCEA provides:

**§ 9123. Duty of Governor with respect to fugitives from justice**

Subject to the provisions of this subchapter, the provisions of the Constitution of the United States controlling, and any and all acts of Congress enacted in pursuance thereof, it is the duty of the Governor of this Commonwealth to have arrested and delivered up to the executive authority of any other state of the United States any person charged in that state with treason, felony or other crime, who has fled from justice and is found in this Commonwealth.

42 Pa.C.S. § 9123. The New York UCEA statute mimics this language. *See* McKinney's CPL § 570.06

[3] The imprecise nature of Detective DeMarco's recollection is understandable because she was on maternity leave from her position beginning on December 19, 2014, and was apparently reconstructing the events occurring after that date by reference to receipts. N.T., 1/5/15, at 19, 42.

UCEA proceedings, Plowden was eventually transported to Cambria County under the auspices of the IAD. *Id*. at 42. To effectuate the transfer, Detective DeMarco "overnighted" the IAD forms on December 22, 2014, to the Pennsylvania IAD Administrator, who, in turn, submitted the forms to the state of New York on December 29, 2014. *Id*. at 42–43. Detective DeMarco could not pinpoint the date that Plowden was available to be picked up from New York custody, only that it was sometime after December 19, 2014. *Id*. at 54. In any event, the Cambria County Sheriff's Office made arrangements to transport Plowden from New York on January 7, 2015. Trial Court Opinion, 3/9/15, at 4.

At the conclusion of the testimony, the Commonwealth argued generally it was entitled to twelve days of excusable delay because "certain things happened here that were beyond our control even though we attempted and tried to get [Plowden] back." N.T., 1/5/15, at 60. The Commonwealth admitted that it should "probably have acted sooner than October [of 2014]," *id*. at 61, but urged that New York's failure to expeditiously hold an IAD hearing, in addition to that jurisdiction's decision to instead hold an extradition hearing, resulted in "additional delay that [was] out of our hands." *Id*. at 63.

Our case law requires the Commonwealth to act diligently to bring a case to trial and to present evidence supporting its diligence at the Rule 600

hearing.   As we stated in **Commonwealth v. Claffey**, 80 A.3d 780 (Pa.

Super. 2013):

> [A] Rule 600 motion shall be denied if the Commonwealth acted with due diligence in attempting to try the defendant timely and the circumstances occasioning the delay were beyond the Commonwealth's control.   **Commonwealth v. Riley**, 19 A.3d 1146, 1148–1149 (Pa. Super. 2011); Pa.R.Crim.P. 600(G). Thus, if the Commonwealth acted with due diligence and the delay in question was beyond the Commonwealth's control, the delay is excusable.   **Riley**, 19 A.3d at 1148–1149.

**Id.** at 786.   **See also Ramos**, 936 A.2d at 1102 (if defendant's trial takes

place outside of the adjusted run date, pursuant to Rule 600(G), it must

then be determined whether the delay occurred despite the Commonwealth's

due diligence); **Commonwealth v. Goldman**, 70 A.3d 874, 879 (Pa. Super.

2013) (Rule 600 provides for dismissal of charges in cases in where the

defendant has not been brought to trial within the term of the adjusted run

date, after subtracting all excludable time and excusable delay that occurs

as a result of circumstances beyond the Commonwealth's control and

despite its due diligence).   Conversely, if the Commonwealth was not

attentive to the progression of the case, any ensuing delay will not be

excluded.   **Cf. Commonwealth v. Colon**, 87 A.3d 352, 361 (Pa. Super.

2014) (Rule 600 violation occurred when Commonwealth failed to exercise

due diligence to try the appellant within 365 days of filing of the criminal

complaint).

The Commonwealth's broad assertion that it diligently pursued

Plowden's return from New York does not warrant relief as it has not

satisfactorily identified twelve days of excusable delay. The Commonwealth has the burden of demonstrating by a preponderance of the evidence that it exercised due diligence in bringing a defendant to trial. ***Commonwealth v. Bradford***, 146 A.3d 693, 701 (Pa. 2012) (citation omitted). The due diligence inquiry is fact-specific, to be determined on a case-by-case basis. ***Id***. at 702.

Even cognizant of the oft-referenced phrase that the Commonwealth need not demonstrate "perfect vigilance and punctilious care," ***Commonwealth v. Selenski***, 994 A.2d 1083, 1089 (Pa. 2010), we cannot conclude that the Commonwealth herein put forth a reasonable effort to demonstrate entitlement to additional credit for excusable delay. The only specific cited by the Commonwealth to support its claim of improper Rule 600 calculation is that "[Plowden] failed to waive extradition on December 11, 2014 necessitating further work for the Commonwealth. This garners the Commonwealth the requisite excusable delay and excludable time." Commonwealth's Brief at 11 (record reference omitted). The Commonwealth, however, makes no attempt to detail further the number of days that should have been excludable due to Plowden's failure to waive extradition or describe the extra work necessitated by Plowden's actions which might be considered as excusable delay. Therefore, the Commonwealth has failed to meet its burden of proof that it acted with due diligence to bring Plowden to trial within the time dictates of Rule 600.

Order affirmed. Jurisdiction relinquished.

P.J.E. Ford Elliott joins the memorandum.

Judge Ott files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/8/2016