J-S94044-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| SAMUEL F. RASHID | |
| Appellant | No. 691 MDA 2016 |

Appeal from the Judgment of Sentence March 31, 2016
in the Court of Common Pleas of Lebanon County Criminal Division
at No(s):
CP-38-CR-0000378-2014
CP-38-CR-0001202-2013
CP-38-CR-0001205-2013
CP-38-CR-0001210-2013

BEFORE: LAZARUS, RANSOM, AND FITZGERALD, [*] JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED JANUARY 27, 2017**

Appellant, Samuel Rashid, appeals from the judgment of sentence entered in the Court of Common Pleas of Lebanon County. Appellant claims that the court erred in declaring him a sexually violent predator ("SVP") because there is insufficient evidence that he is likely to re-offend. We affirm.

Appellant was a physician who was formerly in practice at Lebanon Valley Family Medicine. Over a thirteen year period, Appellant engaged in a pattern of inappropriate behavior with female patients. His victims reported that he would fondle their breasts while listening to their heart or perform

---

[*] Former Justice specially assigned to the Superior Court.

unnecessary pelvic examinations, even when treating them for common colds.

On October 30, 2015, Appellant pleaded no contest to committing the following sexual offenses against four female patients: indecent assault in Nos. 1202-2013, 1205-2013, and 1210-2013,[1] and corruption of minors and indecent assault[2] in No. 378-2014. N.T., Sentencing Hr'g, 3/31/16, at 128-29. The victim in No. 378-2014 was a minor at the time of the offenses. As part of Appellant's plea agreement, the Commonwealth *nolle prossed* a charge of aggravating indecent assault in No. 378-2014. **Id.** at 129-30. The court sentenced Appellant to an aggregate term of imprisonment of 6 months to 2 years less one day and a consecutive term of five years' probation. **Id.** at 132.

On the date of sentencing, the court held a hearing to determine whether Appellant was an SVP. The Commonwealth offered the report and testimony of Dr. Robert Stein, a member of the Sexual Offenders Assessment Board. N.T. at 7. Dr. Stein performed his assessment by reviewing reports from board investigators, the court's assessment order, defense counsel's response, the criminal complaint and affidavit of probable cause, police reports and the transcript of the preliminary hearing. **Id.** at

---

[1] 18 Pa.C.S. § 3126(a)(1) in Nos. 1202-2013 and 1205-2013 and 18 Pa.C.S. § 3126(a)(8) in No. 1210-2013.

[2] Counts 1 through 3, 18 Pa.C.S. §3125(a)(1), 18 Pa.C.S. §6301(a), and 18 Pa.C.S. §3126(a)(1), respectively.

10. Dr. Stein did not interview Appellant, who declined to participate in the assessment process. *Id.*

Although twenty-eight other possible victims lodged complaints, Dr. Stein limited his review to the four victims involved in these cases. N.T. at 11, 19, 35-36. Dr. Stein applied the statutory criteria within 42 Pa.C.S. § 9799.24 to evaluate whether Appellant suffered from a mental abnormality and was likely to commit predatory sexually violent crimes. *Id.* at 10-11.

Dr. Stein found a number of relevant factors. Appellant's offenses against multiple victims indicated greater practice in offending and greater risk-taking than an assault on one victim. N.T. at 11. All four cases involved nonconsenting sexual behavior—inappropriate sexual touching by a medical doctor during a medical examination—a relevant factor in determining mental abnormality. *Id.* at 12. All victims were unrelated to Appellant, a sign of predatory behavior. *Id.* at 12-13. Appellant's assaults on the victims took place over the "lengthy period" of thirteen years. *Id.* at 13, 15. Although the victims were of normal mental capacity, one used Suboxone, which made her unusually vulnerable because Appellant was the only active prescriber of Suboxone in the area. *Id.* at 12. Another victim was unusually vulnerable because she was only thirteen at the time of the offenses, while Appellant was forty-five years old. *Id.* at 12-13.

To determine whether Appellant had a disorder, Dr. Stein took into account the actual behaviors, the duration of time over which they occurred,

the relationship between the offender and the victims and the factors enumerated in the SVP statute. N.T. at 17. In addition, Dr. Stein consulted the Diagnostic and Statistical Manual of Mental Disorders ("DSM-V"), a widely accepted tool in the mental health profession. *Id.* at 14-15. Based on his review, Dr. Stein opined, within a reasonable degree of medical certainty, that Appellant suffers from a psychiatric disorder that Dr. Stein labeled "other specified paraphilic disorder: non-consent." *Id.* at 14, 18. A paraphilic disorder is an incurable lifetime condition. *Id.* at 17. The DSM-V lists eight types of paraphilic disorders but not "other paraphilic disorder". *Id.* at 16. Nevertheless, the DSM-V permits the clinician to diagnose "other paraphilic disorder" if he "specifies what that means." *Id.* Dr. Stein defined Appellant's "other paraphilic disorder" as "a pattern of non-consenting sexual behavior which took place over a period of six months or more." *Id.* at 14.

Dr. Stein concluded that Appellant exhibited a "likelihood" or "risk" of re-offending over the course of his lifetime, because he has engaged in this behavior for six months or more. N.T. at 18, 20. According to the doctor, Appellant presents a risk of re-offending, for despite forfeiting his Pennsylvania license, he could seek licensure in another state or country and resume his predatory conduct or function as a non-licensed consultant to gain access to new victims. *Id.* at 30-31, 38.

Dr. Stein also opined, within a reasonable degree of medical certainty, that Appellant engaged in "predatory behavior", which he defined as "a

relationship that is either established, maintained or promoted in order to facilitate victimization." N.T. at 21. Appellant's acts of "sexual touching" were not physically violent, "but they violated each of these patients sexually." *Id.*

Appellant called Dr. Timothy Foley, a licensed psychologist, as an expert witness. Dr. Foley agreed with Dr. Stein that Appellant had engaged in predatory behavior, but he disagreed with Dr. Stein's diagnosis of "other specified paraphilic disorder." Dr. Foley opined that Appellant suffered from frotteuristic disorder, which the DSM-V defines as "inappropriate and nonconsenting touching of another individual." N.T. at 48-49. Dr. Foley also disputed Dr. Stein's conclusion that Appellant was likely to re-offend, because Appellant was over sixty years old, when "sexual[] recidivism declines precipitously across the board," and no longer had access to female patients after surrendering his medical license. *Id.* at 50-52.

Dr. Stein disputes Dr. Foley's diagnosis of frotteuristic disorder. Dr. Stein asserted that frotteuristic disorder involves a "pattern of behavior in crowded buses or subways" in which individuals "rub themselves to ejaculation" on other persons. N.T. at 34-35. Appellant, Dr. Stein stated, did not engage in this behavior. *Id.* at 35.

During sentencing on March 31, 2016, the court entered an order declaring Appellant a SVP. On Monday, April 11, 2016, Appellant filed timely

post-sentence motions.[3]  On April 28, 2016, while post-sentence motions remained pending, Appellant filed a notice of appeal.  On May 19, 2016, Appellant withdrew his post-sentence motions, and the court docketed an order memorializing the withdrawal pursuant to Pa.R.Crim.P. 720(A)(2)(c).

Appellant raises one issue in this appeal:

Whether the Commonwealth failed to present sufficient evidence to sustain its burden of proof by clear and convincing evidence that Appellant was a sexually violent predator, as defined in 42 Pa.C.S.[] § 9799.12, where it was not proven that Appellant was likely to reoffend because he permanently surrendered his medical license and each of the allegations were limited to occurring within Appellant's medical practice, among other things?

Brief For Appellant, at 13.

Preliminarily, we note that Appellant's appeal was premature.  When, as here, the defendant files timely post-sentence motions, his judgment of sentence does not become final and appealable until the court decides the motions.  ***Commonwealth v. Borerro***, 692 A.2d 158, 159 (Pa. Super. 1997).  When the defendant withdraws timely filed post-sentence motions, and the trial court enters an order memorializing the withdrawal, the defendant may appeal within thirty days of the order. ***Id.***  This case presents a slightly different scenario: Appellant filed timely post-sentence

---

[3] The deadline for filing post-sentence motions was the tenth day after sentencing, April 10, 2016.  ***See*** Pa.R.Crim.P. 720(A)(1).  Because this date fell on Sunday, Appellant timely filed his post-sentence motion on Monday, April 11, 2016.  1 Pa.C.S. § 1908 (when last day of any period of time referred to in any statute falls on Saturday, Sunday, or legal holiday, such day shall be omitted from computation).

motions, **then appealed prematurely (before the trial court decided the motions)**, and then withdrew his motions three weeks after appealing. The trial court then docketed an order memorializing the withdrawal of Appellant's motions. In this circumstance, we regard this appeal as having been timely filed on the date of entry of the memorialization order. *See* Pa.R.A.P. 905(a)(5) ("a notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof"); *Commonwealth v. Claffey*, 80 A.3d 780, 783 (Pa. Super. 2013) (finding appeal timely under identical circumstances).

Appellant does not contest that he suffers from a sexual abnormality and has engaged in predatory behavior. He insists, however, that the Commonwealth failed to prove that he is likely to re-offend, because (1) he only committed sexual offenses within the context of his medical practice, and (2) he can no longer commit such offenses because he has surrendered his medical license. We disagree.

We apply the following standard of review:

> A challenge to a determination of SVP status requires us to view the evidence:
>
> > [I]n the light most favorable to the Commonwealth. The reviewing court may not weigh the evidence or substitute its judgment for that of the trial court. The clear and convincing standard requires evidence that is so clear, direct, weighty and convincing as to enable [the trier of fact] to come to a clear

conviction, without hesitancy, of the truth of the precise facts [at] issue.

The scope of review is plenary. '[A]n expert's opinion, which is rendered to a reasonable degree of professional certainty, is itself evidence.'

A challenge to the sufficiency of the evidence to support an SVP designation requires the reviewing court to accept the undiminished record of the case in the light most favorable to the Commonwealth. The reviewing court must examine all of the Commonwealth's evidence without consideration of its admissibility. A successful sufficiency challenge can lead to an outright grant of relief such as a reversal of the SVP designation, whereas a challenge to the admissibility of the expert's opinion and testimony is an evidentiary question which, if successful, can lead to a new SVP hearing.

***Commonwealth v. Prendes***, 97 A.3d 337, 355-56 (Pa. Super.) (citations omitted), *appeal denied*, 105 A.3d 736 (Pa. 2014).

The basis for a determination that an individual is a SVP is statutory.

***Id.*** at 357. Therefore, the salient statutory inquiry for a SVP designation

is identification of the impetus behind the commission of the offense; that is, whether it proceeds from a mental defect/personality disorder or another motivating factor. The answer to that question determines, at least theoretically, the extent to which the offender is likely to reoffend, and [S]ection [9799.24][4] provides the criteria by which such likelihood may be gauged.

_____

[4] Section 9799.24 provides in pertinent part:

An assessment shall include, but not be limited to, an examination of the following:

(1) Facts of the current offense, including:

(i) Whether the offense involved multiple victims.

(ii) Whether the individual exceeded the means necessary to achieve the offense.

(iii) The nature of the sexual contact with the victim.

(iv) Relationship of the individual to the victim.

(v) Age of the victim.

(vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

(vii) The mental capacity of the victim.

(2) Prior offense history, including:

(i) The individual's prior criminal record.

(ii) Whether the individual completed any prior sentences.

(iii) Whether the individual participated in available programs for sexual offenders.

(3) Characteristics of the individual, including:

(i) Age.

(ii) Use of illegal drugs.

(iii) Any mental illness, mental disability or mental abnormality.

(iv) Behavioral characteristics that contribute to the individual's conduct.

(4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense.

> 'To deem an individual a sexually violent predator, the Commonwealth must first show [the individual] 'has been convicted of a sexually violent offense as set forth in [section 9799.14]. . . .' ***Commonwealth v. Askew***, 907 A.2d 624, 629 (Pa. Super. 2006)[.] ***See also*** 42 Pa.C.S.A. § 9799.12. 'Secondly, the Commonwealth must show that the individual has "a mental abnormality or personality disorder that makes [him] likely to engage in predatory sexually violent offenses."' When the Commonwealth meets this burden, the trial court then makes the final determination on the defendant's status as an SVP.

***Id.*** at 357-58 (some citations omitted).

Viewed in the light most favorable to the Commonwealth, the record provides clear and convincing evidence that Appellant is a SVP. In particular, the record demonstrates that Appellant was likely to re-offend—or in the words of section 9799.12, "likely to engage in predatory sexual offenses"—by committing additional predatory sexually violent offenses.

Dr. Stein's testimony establishes that Appellant suffers from a mental abnormality, other specified paraphilic disorder, that overrides his emotional and volitional control and has caused him to engage in predatory sexual assaults against female patients for thirteen years. This is a lifetime condition for which there is no cure. Although Appellant has forfeited his Pennsylvania license, he is still free to seek licensure in other jurisdictions or work as a non-licensed medical consultant. In either circumstance, his past

---

42 Pa.C.S. § 9799.24(b).

- 10 -

history and his mental abnormality make it likely that he will again engage in predatory sexually violent offenses.

In effect, Appellant asks us to credit Dr. Foley's testimony over Dr. Stein's testimony, thereby viewing the evidence in the light most favorable to him instead of the Commonwealth. We cannot take this step. The trial court ruled in favor of the Commonwealth by accepting Dr. Stein's opinion instead of Dr. Foley's,[5] and we are required to construe the evidence in the light most favorable to the Commonwealth.

For these reasons, we hold that the Commonwealth fulfilled its burden of proving that Appellant is likely to engage in predatory sexual behavior in the future.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/27/2017

---

[5] Moreover, the trial court had ample basis to reject Dr. Foley's opinion of frotteuristic disorder. Dr. Stein observed that individuals with this disorder usually rub their bodies against strangers in public places such as planes, trains and elevators. In this case, Appellant was not a stranger to his patients, and he assaulted them in private examination rooms. Instead of rubbing his body against his patients, Appellant fondled their intimate zones with his hands. N.T. at 34-35.