J-A04026-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ANDRE MOORE | : | |
| | : | |
| Appellant | : | No. 755 EDA 2020 |

Appeal from the Judgment of Sentence Entered November 26, 2019
In the Court of Common Pleas of Delaware County
Criminal Division at No(s):  CP-23-CR-0005396-2018

BEFORE:   STABILE, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KING, J.:                    **FILED JUNE 30, 2021**

Appellant, Andre Moore, appeals from the judgment of sentence entered in the Delaware County Court of Common Pleas, following his jury trial convictions for aggravated indecent assault of a person less than thirteen, indecent assault of a person less than thirteen, corruption of minors, and aggravated indecent assault of a child.[1]  We affirm.[2]

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3125(a)(7), 3126(a)(7), 6301(a)(1)(i), and 3125(b), respectively.

[2] This panel initially issued a decision on April 23, 2021, affirming Appellant's judgment of sentence.  On April 27, 2021, Appellant timely filed a motion for reconsideration, arguing that this Court erred in determining that he waived his Pa.R.Crim.P. 600 claim for failing to develop it sufficiently in his appellate brief.  Specifically, Appellant asserted that this Court "failed to consider the
*(Footnote Continued Next Page)*

The relevant facts and procedural history of this appeal are as follows:

> …[V]ictim…was eleven and in sixth grade, living with her aunt, E.P.,[2] in Chester, Delaware County. Appellant was E.P.'s boyfriend at the time of the assault.
>
> > [2] This [c]ourt will use the initials of…[V]ictim's aunt in order to protect…[V]ictim's anonymity.
>
> During the time that…[V]ictim was residing with E.P., Appellant would come over and stay at the residence. One day, …[V]ictim came home from school and was watching television in her room; no one else was home. A couple of hours later, Appellant entered the home and asked…[V]ictim if she would like to watch a movie in E.P.'s room. …[V]ictim turned off her tv and went with Appellant into E.P.'s room to watch a movie; it was not uncommon for the household to watch movies in E.P.'s bedroom. …[V]ictim laid down on the bed, resting her head on the pillows. Appellant laid down in the same direction, on the left-hand side of…[V]ictim. While they were watching the movie, Appellant began rubbing…[V]ictim's vagina, underneath her clothing, with his fingers. It lasted for a couple of minutes and it hurt; Appellant asked her if she ever touched herself "down there" or if she wanted him to touch her. Because she was scared to move or answer, …[V]ictim laid there, facing the tv and remained silent. …[V]ictim was confused as to why it was happening, but she wanted it to stop, so she asked if she could go to the bathroom down the hall. Appellant stopped the touching at that point, and…[V]ictim walked down the hall to the bathroom.
>
> …[V]ictim went into the bathroom, shut the door, but did not lock it because the lock does not work. As she was finishing going to the bathroom and pulling up her pants, Appellant walked in and pulled down his own pants and told…[V]ictim to "turn around." …[V]ictim turned around and she could feel Appellant rubbing his penis between her legs. She did not physically see his penis, but she felt it on

arguments made in [his] Reply Brief which fully address his Rule 600 claim." (Appellant's Petition for Panel Reconsideration, filed 4/27/21, at 2). We granted reconsideration on June 3, 2021, and now issue this memorandum.

her bare skin as her pants were still down at this point. As he was rubbing his penis between her legs, Appellant had his hands grabbing onto her waist. Appellant's penis was not inside of…[V]ictim's vagina. When Appellant stopped the rubbing, he told…[V]ictim to clean off and he left the bathroom. …[V]ictim used a washcloth to wipe off and went back into her own bedroom. Appellant walked by the door of her room and told her not to tell her aunt what had occurred. When he walked away, …[V]ictim began crying. At this point, it was nighttime, and she fell asleep without seeing her aunt that evening.

The following morning, …[V]ictim saw her aunt but did not tell her what happened with Appellant the night before because she was too scared that her aunt would be mad at her and would not believe her.

Although she did not tell her aunt, …[V]ictim told her friend, M.C. (also eleven at the time) as they were walking to school that day. M.C. and…[V]ictim are close friends, and both were in the same class at Toby Farms Elementary. M.C. and…[V]ictim walked to school together, as they usually do. M.C. noticed that…[V]ictim was acting differently, being much more quiet than usual. When they had reached the school, but were still outside, …[V]ictim handed M.C., her notebook. M.C. opened the notebook, recognized the handwriting inside to be…[V]ictim's and read a sentence that said a guy stuck his finger inside of [Victim] and had sex with her. After she read it, M.C. told…[V]ictim to rip out the page and throw it away because she did not want other people to see it. M.C. felt like it would make the other kids at school talk about her. M.C. saw…[V]ictim rip the page out of the notebook and throw it away.

During the school day, …[V]ictim also told another friend, J.M. (also a minor), who then accompanied her to the principal's office, where she told the Vice Principal, Dr. Lorrain Baptiste.

Dr. Baptiste had been the Vice Principal at Toby Farms Elementary School for a total of two years; she was familiar with…[V]ictim as a 6th grader in her school at the time. On May 30, 2018, in the morning hours, …[V]ictim had come into the office with her friend; she was very quiet, and her

friend kept saying to her "tell her." …[V]ictim told Dr. Baptiste, that she "was raped" at which point, Dr. Baptiste excused the friend from the office. Knowing that children that young can sometimes misinterpret the meaning of such a heavy word, she asked…[V]ictim to explain more of what happened. …[V]ictim told Dr. Baptiste that she was sitting at home at her aunt's house, where she and her aunt's boyfriend were watching television; the boyfriend began touching her inappropriately, so she got up from the sofa and went to the bathroom and he followed her inside the bathroom and touched her again. Dr. Baptiste asked if the touching was of her private parts, and…[V]ictim answered "yes." Dr. Baptiste asked what happened in the bathroom and…[V]ictim told her that she had gone to the bathroom, and that she was sitting on the toilet when he came in and started touching her again. …[V]ictim stated that her aunt was at work at the time because she works nights. Dr. Baptiste did not want to get too far into the conversation before alerting the social worker, so she asked…[V]ictim if she was hurt or bruised and…[V]ictim stated that she was not. At that point, Dr. Baptiste told the Principal, who placed a call to the District's social worker. Dr. Baptiste used the word "rape" in the report but also used the word "fondling" because the actions that…[V]ictim described to her seemed to fit that description over the word rape. …[V]ictim seemed shy and ashamed at first but did not appear apprehensive or scared once she started talking. Dr. Baptiste did not take notes of their meeting because she knows that is the job of the social worker.

As a result of…[V]ictim's disclosure, Ms. Tammy Cox-Cottman, school social worker for Chester Upland School District, which includes Toby Farms Intermediate School, was called to come speak with…[V]ictim. It is District policy that a social worker become involved in any child abuse situations in order to make the report to Child Line. Ms. Cox-Cottman arrived at the school shortly after she was requested; she knows that it was May 30, 2018. When she spoke with…[V]ictim, …[V]ictim told her that her aunt's boyfriend, [Appellant], touched her breasts and vagina area during a movie, that he asked her to watch, while they were both inside her aunt's home; her aunt was at work. …[V]ictim told Ms. Cox-Cottman that she asked to go to the bathroom, but he had come into the bathroom while she

was in there and asked her to bend over and [h]e began rubbing his penis against her backside. Ms. Cox-Cottman made notes of the interaction. …[V]ictim told Ms. Cox-Cottman that Appellant told her not to tell anyone. Ms. Cox-Cottman believed that…[V]ictim told her the touching occurred while her clothing was on. Based upon the information provided, Ms. Cox-Cottman made a formal report of child abuse to the Child Line Hotline.

As it was the end of the school day, …[V]ictim's aunt, was already on her way to pick her up. Ms. Cox-Cottman had…E.P. come into the room with her and…[V]ictim. Although…[V]ictim was not crying when talking to Ms. Cox-Cottman, as soon as she saw her aunt, she broke down and started crying.

E.P., was told by…[V]ictim that something had happened to her the night before. …[V]ictim told E.P., that she didn't want to tell her because [Victim] thought that she would be blamed since Appellant was [E.P's] boyfriend. E.P. recalled that the night before, she had come home from work, she saw the lights and tv on in…[V]ictim's room, but she thought…[V]ictim was asleep, so she just turned them off. Appellant had called E.P. earlier in the day and said that he would be going over and that he could be there when she got home from work. According to E.P., it was normal for people to watch tv in her room.

As a result of the call to Child Line, on June 11, 2018, …[V]ictim met with Ms. [Susanne Hawkins Whiting], who works at the Delaware County Children's Advocacy Center, an organization whose focus is to bring together different child serving agencies for the coordination of investigation of child abuse. In her position as a Child Forensic Interviewer, she would conduct [interviews] with children who were victims or witnesses to a crime or abused, either physically or sexually, in order [to] elicit information about their experiences. …[V]ictim told Ms. Whiting that Appellant touched her vaginal area with his fingers and also that he rubbed his penis on her behind area.

Officer Jennifer Jones, of the Chester City Police Department also became involved in the case as a result of her title as a Juvenile Investigator. Officer Jones specifically handles

investigations on cases that involve children under the age of eighteen as a victim. Officer Jones received a report from Child and Youth Services that…[V]ictim had made a report of sexual abuse with Appellant as the abuser. As a result of the report, Officer Jones made contact with…[V]ictim's aunt, E.P., who informed Officer Jones as to what…[V]ictim told her had occurred. Officer Jones set up the interview between…[V]ictim and the Child Advocacy Center. Officer Jones was present at the interview but was not there to ask questions, more so to sit and listen; if she had any questions that she wanted asked, she would relay them to the interviewer. …

(Trial Court Opinion, filed June 15, 2020, at 1-7) (internal citations and some footnotes omitted).

The Commonwealth filed a criminal complaint and issued an arrest warrant for Appellant on June 20, 2018, and the court subsequently scheduled a preliminary hearing. The Commonwealth made two requests for the court to reschedule the preliminary hearing, from July 10, 2018 to July 31, 2018, and from July 31, 2018 to August 7, 2018, due to "Witness Unavaila[bility]." (Application for Continuance at 1, unpaginated). The magisterial district judge also continued the case from August 7, 2018 to August 28, 2018, due to "recusal." (*Id.*) The preliminary hearing was further continued until September 4, 2018, and again until September 11, 2018, because the "Defendant [was] Not Ready."[3] (Criminal Docket at 1). The court finally conducted the preliminary hearing on September 11, 2018, and Appellant

_____

[3] The record suggests that the Commonwealth requested the continuance from August 28, 2018 to September 4, 2018, while the September 4, 2018 to September 11, 2018 request appears to have been made by Appellant.

waived formal arraignment on October 10, 2018.

On November 30, 2018, Appellant filed a motion *in limine* to exclude evidence of his prior *crimen falsi* convictions. The Commonwealth filed on December 4, 2018, a motion to admit as impeachment evidence Appellant's most recent *crimen falsi* conviction for receiving stolen property. On the same day, the Commonwealth also filed a petition seeking to admit Victim's out-of-court statements to Susanne Hawkins Whiting[4] and Dr. Lorrain Baptiste under the "Tender Years" exception to the rule against hearsay. The court scheduled a hearing on the motion and petition for December 20, 2018. On December 18, 2018, the Commonwealth filed an amended "Tender Years" petition, requesting that Victim's statements to E.P. be admitted as well. The court conducted an initial hearing on the motion/petition as scheduled on December 20, 2018, during which Dr. Baptiste and E.P. testified and the court admitted Victim's interview with Ms. Whiting as evidence. During Dr. Baptiste's and E.P.'s testimony, the witnesses mentioned that the school district's social worker, Ms. Cottman, also spoke with Victim about the alleged abuse. At the conclusion of testimony, the court decided to continue the hearing until January 25, 2019, to allow for the Commonwealth to present testimony from Ms. Cottman. The court explained that it felt Ms. Cottman was a "key individual in this whole scenario…because she's in between Dr. Baptiste and

---

[4] The Commonwealth incorrectly referred to Ms. Whiting as Susanne Blessing in this petition.

[E.P.]," and without her testimony, "[t]here's a gap." (N.T. Hearing, 12/20/18, at 42-43).

On January 25, 2019, the Commonwealth requested another continuance, due to having "just identified" a new witness. (Delaware County Court of Common Pleas Filings Information at 2). The court rescheduled the hearing for February 15, 2019. On February 14, 2019, the Commonwealth filed an amended "Tender Years" petition, requesting Victim's statements to Ms. Cottman and M.C. be admitted under the "Tender Years" hearsay exception as well. The court conducted the second portion of the "Tender Years" hearing on February 15, 2019. At the conclusion of the hearing, the court ordered both sides to submit findings of fact and conclusions of law. The court initially scheduled final argument on the motions for March 28, 2019, but later rescheduled it for April 18, 2019. Following the hearing on April 18, 2019, the court ordered the parties to brief the issues, and scheduled a status conference for May 30, 2019.

On April 30, 2019, the Commonwealth filed an amended motion to introduce Appellant's *crimen falsi* conviction as impeachment evidence. On May 8, 2019, the Commonwealth also filed a brief in support of its requests to admit Victim's out-of-court statements to M.C., Dr. Baptiste, Ms. Cottman, E.P. and Ms. Whiting under the "Tender Years" exception to the rule against hearsay. The court issued an order on May 29, 2019, deeming the hearsay statements of Dr. Baptiste, Ms. Cottman, and Ms. Whiting "admissible as

substantive evidence," but determining the hearsay statements of E.P. and M.C. were "not…admissible as substantive evidence." (Order, 5/29/19, at 1). On the same day, the court also entered an order denying the Commonwealth's motion to admit Appellant's prior conviction as impeachment evidence. The court then scheduled a jury trial for September 10, 2019.

On July 19, 2019, Appellant filed a motion to dismiss pursuant to Pa.R.Crim.P. 600. The court conducted a Rule 600 hearing on September 6, 2019, and denied the motion the same day. Appellant proceeded to a jury trial on September 10, 2019, at which Victim, M.C., Ms. Cottman, Ms. Whiting, and E.P. testified and the court played recordings of Ms. Whiting's interview with Victim and Dr. Baptiste's "Tender Years" hearing testimony.[5] On September 12, 2019, the jury convicted Appellant of the above-mentioned offenses. The court sentenced Appellant on November 26, 2019, to an aggregate term of 11 years and 3 months to 22½ years' imprisonment, plus 3 years' probation. Appellant filed a timely post-sentence motion on November 27, 2019, challenging the weight and sufficiency of the evidence. The court denied the motion on February 3, 2020. On February 21, 2020, Appellant filed a timely notice of appeal. The court ordered Appellant on February 25, 2020, to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b); Appellant complied on March 21, 2020.

_____

[5] Dr. Baptiste was unavailable to testify at trial due to having moved to Dubai.

Appellant raises three issues for our review:

Whether the evidence is insufficient to sustain the conviction for aggravated indecent assault where the trial testimony and other evidence fails to prove, beyond a reasonable doubt, that Appellant's purported conduct with regard to the alleged victim amounted to any type of penetration, however slight, of the alleged victim's genital area?

Whether the trial court erred in allowing the Commonwealth to admit the hearsay testimony of certain individuals—Su[s]anne Hawkins Whiting, M.C. (a minor), Tammy Cox-Cottman, [E.P.], and Lorrain Baptiste—under the tender years hearsay exception, where the statements of the alleged victim that they each testified about were not sufficiently reliable on the basis of consistency or spontaneity?

Whether the trial court erred in denying Appellant's motion to dismiss pursuant to Pa.R.Crim.P. 600 where the delays in this matter resulted from the Commonwealth's failure to exercise due diligence, causing trial to commence three months after the run date?

(Appellant's Brief at 9).

In his first issue, Appellant argues the evidence was insufficient to establish that he committed aggravated indecent assault. Specifically, Appellant contends the evidence presented at trial was insufficient to support a finding that he penetrated Victim's genitals or anus. Rather, Appellant maintains Victim's testimony established only that he placed his fingers on top of Victim's vagina, not inside of it. Appellant avers the only evidence indicating penetration occurred, M.C's testimony concerning Victim's handwritten message in a notebook, constitutes hearsay within hearsay. In contrast, Appellant highlights the testimony of the other "Tender Years" witnesses,

which Appellant feels indicated "that all of the touching of [Victim's] genital area was over the top of clothing that she was wearing." (Appellant's Brief at 22). As Appellant contends the Commonwealth failed to prove the element of penetration, Appellant concludes this Court must vacate his convictions for aggravated indecent assault. We disagree.

When examining a challenge to the sufficiency of evidence:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa.Super. 2011), *appeal denied*, 613 Pa. 642, 32 A.3d 1275 (2011) (quoting *Commonwealth v. Jones*, 874 A.2d 108, 120-21 (Pa.Super. 2005)).

The Crime Code defines aggravated indecent assault in relevant part as follows:

**§ 3125. Aggravated indecent assault**

**(a)  Offenses defined.—**Except as provided in section 3121 (relating to rape), 3122.1 (relating to statutory sexual assault), 3123 (relating to involuntary deviate sexual intercourse) and 3124.1 (relating to sexual assault), a person who engages in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures commits aggravated indecent assault if:

(1) the person does so without the complainant's consent;

(2)  the person does so by forcible compulsion;

(3) the person does so by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution;

(4) the complainant is unconscious or the person knows that the complainant is unaware that the penetration is occurring;

(5) the person has substantially impaired the complainant's power to appraise or control his or her conduct by administering or employing, without the knowledge of the complainant, drugs, intoxicants or other means for the purpose of preventing resistance;

(6) the complainant suffers from a mental disability which renders him or her incapable of consent;

(7)  the complainant is less than 13 years of age…

*    *    *

**(b)  Aggravated indecent assault of a child.—**A person commits aggravated indecent assault of a child when the person violates subsection (a)(1), (2), (3), (4), (5) or (6) and the complainant is less than 13 years of age.

18 Pa.C.S.A. §§ 3125(a)(1)-(7), and (b).  Significantly, this Court has clarified

that "the term 'penetration, however slight' is not limited to penetration of the vagina; entrance in the labia is sufficient." **Commonwealth v. Hunzer**, 868 A.2d 498, 505-506 (Pa.Super. 2005), *appeal denied*, 584 Pa. 673, 880 A.2d 1237 (2005) (quoting **Commonwealth v. Hawkins**, 614 A.2d 1198, 1200 n.1 (Pa.Super. 1992)).

Instantly, Victim testified that Appellant rubbed her vagina with his fingers under her clothing and "it [hurt]." (N.T. Trial, 9/10/19, at 127). Victim further stated that Appellant rubbed his penis between her legs. (**Id.** at 130). While Victim admitted on cross-examination that Appellant did not put his penis or finger inside of her vagina, such acts were not necessary for the jury to find that penetration had occurred. Here, Victim's testimony that Appellant touched her vagina under her clothing to the point that "it [hurt]" was sufficient for the jury to determine that Appellant digitally penetrated Victim's genitals and was guilty of aggravated indecent assault. **See Hunzer, supra**; **Commonwealth v. Cody**, 584 A.2d 992, 993 (Pa.Super. 1991), *appeal denied*, 527 Pa. 622, 592 A.2d 42 (1991) (stating: "In a prosecution for sex offenses, a verdict may rest on the uncorroborated testimony of the victim").

The Commonwealth also presented the following evidence in support of Victim's testimony: (1) the recording of Ms. Whiting's interview with Victim, in which Victim states that Appellant rubbed "inside [her] private part" under her underwear with his finger and "he kept like rubbing it hard so it started hurting" (Interview, 6/11/18, at 17); (2) Officer Jones' testimony that she

wrote in her incident report that Appellant touched Victim's "chest area and private parts" and "rubb[ed] her vagina with his fingers" (N.T. Trial, 9/11/19, at 29); (3) M.C.'s testimony that Victim handed her a composition notebook containing a handwritten message stating that a man stuck his finger in Victim's vagina and had sex with her (*Id.* at 52); (4) Ms. Cottman's testimony that Victim told her Appellant "touched [Victim's] breasts and her private area, her vagina area and also that he had asked her to…bend over and he [rubbed] his penis against her backside, her rear" (*Id.* at 89-90); (5) Ms. Cottman's testimony that Victim told her Appellant "entered the bathroom and fondled [Victim] and rubbed against her" (*Id.* at 95); and (5) Dr. Baptiste's "Tender Years" hearing testimony in which Dr. Baptiste explained that Victim came to her office and told her that Appellant inappropriately touched Victim (N.T. Hearing, 12/20/18, at 12). While Ms. Cottman stated that she remembered Victim telling her that Appellant touched Victim over her clothing, the jury was free to believe all, part, or none of the evidence each witness presented. **See Hansley, supra**. Thus, viewed in the light most favorable to the Commonwealth as verdict-winner, the evidence was sufficient to enable the jury to find beyond a reasonable doubt that Appellant committed aggravated indecent assault. **See** 18 Pa.C.S.A. §§ 3125(a)(7) and (b); **Hansley, supra**.

In his second issue, Appellant argues the trial court erred in admitting the testimony of M.C., Ms. Cottman, Dr. Baptiste, Ms. Whiting, and E.P. under the "Tender Years" exception to the rule against hearsay. Appellant avers that

Victim's statements to these witnesses were "not spontaneous in any way, nor were they consistent." (Appellant's Brief at 25). As to M.C., Appellant contends all of M.C.'s testimony stemmed from the handwritten statement in the composition notebook Victim gave to M.C. Appellant maintains such a written statement cannot be considered spontaneous where it was given to M.C. the morning following the alleged offense and was "clearly given to her after deliberate planning." (*Id.*). Appellant also claims M.C.'s testimony was inconsistent with other witnesses' testimony as to when the alleged offense occurred, as M.C. testified that Victim told her "something happened to [Victim] over the weekend" prior to giving M.C. the composition notebook. (*Id.* at 26).

Appellant further asserts that Victim's statements to Ms. Cottman and Dr. Baptiste were not spontaneous as their conversations with Victim took place after Victim gave M.C. the handwritten notebook. Additionally, Appellant points out that Victim was accompanied to Dr. Baptiste's office by a friend who encouraged her to talk. Appellant further highlights that Dr. Baptiste and Ms. Cottman testified that the alleged offense occurred on a sofa, while Victim testified that the incident occurred on her aunt's bed.

Appellant also attacks E.P.'s testimony as inconsistent with that of the other witnesses. Appellant specifically highlights that (1) E.P.'s testimony focused solely on what happened in the bathroom and did not mention anything occurring in the bedroom; (2) E.P. testified that Victim was

completely undressed in the bathroom when the abuse occurred; and (3) E.P. admitted on cross-examination that Victim never mentioned watching a movie with Appellant when the abuse occurred. Appellant additionally argues that Victim's statements to E.P. were not spontaneous. Appellant emphasizes that E.P.'s testimony indicates that Victim failed to tell E.P. about the alleged abuse when E.P. returned from work that evening or when E.P. drove Victim to school the following morning; Victim only told E.P. of the abuse after Ms. Cottman instructed her to do so.

Finally, Appellant claims that the hearsay testimony of Ms. Whiting, derived from an interview with Victim which was conducted nearly two weeks after the alleged incident occurred, was not spontaneous. Due to the trial court's errors in admitting the testimony of these witnesses under the "Tender Years" exception, Appellant concludes this Court should vacate the judgment of sentence. We disagree.

"The admissibility of evidence is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error." *Commonwealth v. Ballard*, 622 Pa. 177, 197-98, 80 A.3d 380, 392 (2013), *cert. denied*, 573 U.S. 940, 134 S.Ct. 2842, 189 L.Ed.2d 824 (2014).

> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary

actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Commonwealth v. Goldman*, 70 A.3d 874, 878-79 (Pa.Super. 2013), *appeal denied*, 624 Pa. 672, 85 A.3d 482 (2014). "To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." ***Commonwealth v. Lopez***, 57 A.3d 74, 81 (Pa.Super. 2012), *appeal denied*, 619 Pa. 678, 62 A.3d 379 (2013).

"Hearsay" is an out-of-court statement offered in evidence to prove the truth of the matter asserted. Pa.R.E. 801(c). Generally, hearsay testimony is inadmissible at trial. ***See*** Pa.R.E. 802. "The tender years exception allows for the admission of a child's out-of-court statement due to the fragile nature of young victims of sexual abuse." ***Commonwealth v. Kriner***, 915 A.2d 653, 657 (Pa.Super. 2007) (quoting ***Commonwealth v. Fink***, 791 A.2d 1235, 1248 (Pa.Super. 2002)) (internal quotation marks omitted). The "Tender Years" exception to the hearsay rule provides:

**§ 5985.1. Admissibility of certain statements**

**(a)  General rule.—**

(1) An out-of-court statement made by a child victim or witness, who at the time the statement was made was 12 years of age or younger, describing any of the offenses enumerated in paragraph (2), not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal or civil proceeding if:

> (i) the court finds, in an *in camera* hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability; and
>
> (ii) the child either:
>
> > (A)  testifies at the proceeding; or
> >
> > (B)  is unavailable as a witness.
>
> (2)  The following offenses under 18 Pa.C.S. (relating to crimes and offenses) shall apply to paragraph (1):
>
> * * *
>
> Chapter 31 (relating to sexual offenses)
>
> * * *

42 Pa.C.S.A. § 5985.1.

"Any statement admitted under the ["Tender Years" hearsay exception] must possess sufficient indicia of reliability, as determined from the time, content, and circumstances of its making." ***Commonwealth v. O'Drain***, 829 A.2d 316, 320 (Pa.Super. 2003). "The main consideration for determining when hearsay statements made by a child witness are sufficiently reliable is whether the child declarant was particularly likely to be telling the truth when the statement was made." ***Commonwealth v. Lyons***, 833 A.2d 245, 255 (Pa.Super. 2003), *appeal denied*, 583 Pa. 695, 879 A.2d 782 (2005). Factors the court may consider when determining reliability include, but are not limited to, "the spontaneity of the statements, consistency in repetition, the mental state of the declarant, use of terms unexpected in children of that age

and the lack of a motive to fabricate." *Commonwealth v. Delbridge*, 578 Pa. 641, 675, 855 A.2d 27, 47 (2003); *Lyons, supra*.

Importantly, however, "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). "[I]ssues are preserved when objections are made timely to the error or offense." *Commonwealth v. Baumhammers*, 599 Pa. 1, 23, 960 A.2d 59, 73 (2008), *cert. denied*, 558 U.S. 821, 130 S.Ct. 104, 175 L.Ed.2d 31 (2009). "The purpose of contemporaneous objection requirements respecting trial-related issues is to allow the court to take corrective measures and, thereby, to conserve limited judicial resources." *Commonwealth v. Sanchez*, 614 Pa. 1, 32, 36 A.3d 24, 42 (2011), *cert. denied*, 568 U.S. 833, 133 S.Ct. 122, 184 L.Ed.2d 58 (2012). "[A] party may not remain silent and afterwards complain of matters which, if erroneous, the court would have corrected." *Commonwealth v. Strunk*, 953 A.2d 577, 579 (Pa.Super. 2008) (quoting *Commonwealth v. Clair*, 458 Pa. 418, 423, 326 A.2d 272, 274 (1974)). *See, e.g., Commonwealth v. Adams*, 39 A.3d 310, 319-20 (Pa.Super. 2012), *affirmed*, 628 Pa. 600, 104 A.3d 511 (2014) (reiterating: "[A] defendant's failure to object to allegedly improper testimony at the appropriate stage…constitutes waiver" and "absence of a contemporaneous objection below constituted a waiver of appellant's claim respecting the prosecutor's closing argument").

Instantly, the record makes clear Appellant failed to object at trial to the

admission of M.C.'s and E.P.'s testimony. (**See** N.T. Trial, 9/11/19, at 49-80; 107-35). Thus, as it concerns M.C. and E.P., Appellant has waived this issue for appellate review. **See** Pa.R.A.P. 302(a); **Adams, supra**.

Further, the trial court analyzed this issue regarding Dr. Baptiste, Ms. Cottman, and Ms. Whiting as follows:

> After a lengthy Tender Years Hearing, this [c]ourt issued an order that the statements made by…[V]ictim to Dr. Lorrain Baptiste, Ms. Tammy Cox-Cottman, and Ms. Susanne Whiting were admissible as substantive evidence because they clearly established sufficient indicia of reliability to allow introduction of the occurrence at trial.
>
> The determination was not erroneous for the following reasons. First, …[V]ictim was eleven at the time of the assault, therefore satisfying the age element of the statute. Next, there is no argument that the statements were not relevant, as they were all directly relevant to the charges. Third, the statements provided a sufficient indicia of reliability.
>
> With regard to reliability, the [c]ourt examined the spontaneity of the statements, the consistency, …[V]ictim's mental state, the use of terminology by a child of that age, and the lack of a motive to fabricate.
>
> As to motive, there exists no motive for…[V]ictim to lie. She testified herself that Appellant would come over to the house and that she didn't have any particular relationship with him one way or the other. She didn't hate him, there was no reason to get rid of him. To the contrary, he was her aunt's boyfriend, she was living in her aunt's house, there exists every reason for…[V]ictim to not want to uproot her living situation or risk upsetting her aunt for a fabricated story.
>
> As to…[V]ictim's mental state, with each witness, it was clear that…[V]ictim had suffered a trauma. Her friend M.C., whom she trusted, told the [c]ourt that…[V]ictim was different that morning, very quiet and hesitant. Dr. Baptiste

testified that…[V]ictim appeared shameful, an entirely credible emotion for an eleven-year-old to feel while trying to process an adult touching her in that manner. Ms. Cox-Cottman testified that…[V]ictim was calm up until the time she saw her aunt, the person she feared telling the most, where she broke down crying. …[V]ictim's mental state at the time of the disclosures was always consistent with experiencing that kind of trauma as a child.

With regard to consistency and also age-appropriate language, Appellant argued that the discrepancies in…[V]ictim's recollections to different authority figures showed that the statements were not reliable. For instance, the use of the word "rape" or "sex." As Dr. Baptiste stated, the use of the word by an eleven-year-old girl may not mean the legal definition of the word rape. …[V]ictim knew that the inappropriate touching by Appellant was wrong, that it wasn't supposed to happen, that it made her feel bad and that it hurt. The argument that…[V]ictim did not use a more "appropriate" term for the assault is erroneous. Rather, this [c]ourt found the statements made by…[V]ictim to be even more reliable because she was not using legal terminology. Appellant also took issue with the inconsistency that the assault happened "on the couch" as Ms. Cox-Cottman reported or in the bedroom. Ms. Cox-Cottman was clear that she wrote in her notes that she assumed it was a sofa because…[V]ictim told her they were watching tv, so she assumed a sofa in the living room. However, E.P. testified that its very normal in her home to have people watching tv in her bedroom. The minor inconsistencies were just that, minor. …[V]ictim's account of what happened, that they were laying down together, that Appellant touched her genital area inappropriately, that she wanted him to stop so she asked to go to the bathroom, that Appellant followed her into the bathroom and told her to turn around and bend over while he rubbed his penis against her, never changed.

(Trial Court Opinion at 12-14). We agree with the trial court's assessment.

Here, the trial court considered each of the factors in determining the reliability of Victim's statements to Dr. Baptiste, Ms. Cottman, and Ms. Whiting, specifically highlighting how the statements revealed Victim's mental

state, use of terminology of a child of similar age, and lack of motive to lie. *See Delbridge, supra.* Appellant's attempts to point out minor inconsistencies in the witnesses' testimony regarding these statements were not enough to undermine the statements' overall reliability and consistency. Thus, the trial court properly admitted testimony from Dr. Baptiste, Ms. Cottman, and Ms. Whiting pursuant to the "Tender Years" hearsay exception. *See* 42 Pa.C.S.A. § 5985.1; *Lyons, supra*.

In his third issue, Appellant argues in his principal brief that the trial court erred in denying his Rule 600 motion where more than 365 days elapsed between the filing of the criminal complaint and his trial, and the Commonwealth did not exercise due diligence in ensuring that the trial began during the required period. Appellant contends that the Commonwealth's lack of due diligence led to it not being "trial ready" even up to the day of trial, as that was the first time the Commonwealth revealed that Dr. Baptiste was unavailable to testify due to having moved to Dubai.

While counsel for Appellant conceded at the Rule 600 hearing that part of the delay could be attributed to his filing of a motion *in limine*, Appellant avers that the delay caused by defense counsel's motion was inconsequential in comparison to the delay caused by the Commonwealth. Specifically, Appellant points to the Commonwealth's failure to call Ms. Cottman to testify as a "Tender Years" witness until the other "Tender Years" witnesses mentioned her name during the first hearing. Appellant asserts the

Commonwealth should have been aware of the importance of Ms. Cottman's testimony as it relates to the sequence of events and should have anticipated calling her as a witness. Appellant avers the Commonwealth's failure to investigate and include Ms. Cottman as a witness earlier in the proceedings, and its filing of an amended petition to include her testimony as well as that of another witness, represents a lack of due diligence on the Commonwealth's part.

Appellant expands upon his Rule 600 argument in his reply brief, alleging the Commonwealth's contention that only 35 days are attributable to Commonwealth delay is incorrect. Rather, Appellant maintains the 161-day period between the Commonwealth's filing of its "Tender Years" motion on December 20, 2018,[6] and the court's decision on that motion on May 30, 2019, must also be included in the Rule 600 calculation. Appellant avers the Commonwealth must be held responsible for this period of delay where (1) the Commonwealth was the party that filed the motion, and (2) the Commonwealth was not duly diligent in discovering, investigating, and offering Ms. Cottman as a witness, leading to the postponement of the "Tender Years" hearing from December 20, 2018, until April 18, 2019. Appellant

_____

[6] The record reflects that the Commonwealth filed its initial "Tender Years" motion on December 4, 2018. Appellant, however, utilizes December 20, 2018 (the date of the first hearing on the motion), and the corresponding 161-day period between December 20, 2018 and May 30, 2019, throughout the analysis of his reply brief.

further asserts that none of the 161 days is attributable to judicial delay because "'judicial delay' cannot be considered until after the Commonwealth's diligence is assessed, and because the Commonwealth was not duly diligent for the 161 days at issue, there was no 'judicial delay' in this case." (Appellant's Reply Brief at 9).

Additionally, Appellant contends the 103 days from the May 30, 2019 decision on the "Tender Years" motion until trial began on September 10, 2019 "do not constitute judicial delay" and must be included in the Rule 600 analysis as well. (*Id.* at 3). Appellant stresses that the trial court and the Commonwealth do not argue that this time constitutes "excludable time" so it should therefore be included in the Rule 600 calculation. Appellant further argues that there was no evidence of a "congested docket," or any other reason given for why the case could not have been heard earlier. (*Id.* at 10). Appellant concludes that since trial began 82 days past the run date of June 20, 2019, the court should have granted his Rule 600 motion, and this Court should vacate the judgment of sentence. We disagree.[7]

In evaluating Rule 600 issues, our Supreme Court has stated:

---

[7] We caution Appellant that in some instances, the failure to adequately address an issue in the principal brief could result in waiver of the claim on appeal. *See Commonwealth v. Carr*, 227 A.3d 11 (Pa.Super. 2020) (stating that it is not purpose of reply brief to remedy discussions of issues presented poorly in appellant's principal brief; declining to consider additional arguments raised in appellant's reply brief concerning his sufficiency of evidence claim). Upon reconsideration of this appeal, however, we decline to find waiver of Appellant's Rule 600 claim and will address the issue on the merits.

> By the terms of Rule 600, the Commonwealth must bring a defendant to trial within 365 days from the date upon which a written criminal complaint is filed. Pa.R.Crim.P. 600(A)(2)(a). However, the Rule 600 run date may be adjusted pursuant to the computational directives set forth in Subsection (C) of the Rule. For purposes of the Rule 600 computation, "periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence." [Pa.R.Crim.P.] 600(C)(1). "Any other periods of delay," including those caused by the defendant, "shall be excluded from the computation." ***Id.***

***Commonwealth v. Barbour***, 647 Pa. 394, 399, 189 A.3d 944, 947 (2018).

In other words, when analyzing whether a Rule 600 violation has occurred, we exclude all periods of delay, except those attributable to the Commonwealth where it has failed to act diligently, from the applicable date to decide whether the defendant has been brought to trial within the Rule 600 time limitations. ***See id.***

Instantly, the Commonwealth filed the criminal complaint on June 20, 2018. Appellant filed his Rule 600 motion on July 19, 2019—only twenty-nine days beyond the mechanical run date of June 20, 2019. The record shows that Appellant requested a continuance from September 4, 2018 to September 11, 2018. Additionally, on November 30, 2018, Appellant filed a motion *in limine* to exclude evidence of his prior *crimen falsi* convictions. The court scheduled a hearing on Appellant's motion for December 20, 2018. When the delay caused by Appellant's continuance request and the filing of his motion *in limine* are deducted from the computation (even if we were to assume that

the Commonwealth was responsible for all other delays), Appellant would not have had a valid Rule 600 claim at the time he filed his motion. **See Commonwealth v. Hunt**, 858 A.2d 1234, 1238 (Pa.Super. 2004) (*en banc*), *appeal denied*, 583 Pa. 659, 875 A.2d 1073 (2005) (stating that to obtain relief, defendant must have valid Rule 600 claim at time he files his motion); **Commonwealth v. Claffey**, 80 A.3d 780, 787 (Pa.Super. 2013), *appeal denied*, 624 Pa. 680, 86 A.3d 231 (2014) (stating: "[A]ny passage of time resulting from the filing of the Rule 600 motion itself (*e.g.*, time required by the court to schedule and conduct a hearing and/or time needed to take the case under advisement before ruling) is not attributable to the Commonwealth"). We need not proceed further to deduct any other periods of delay to reject Appellant's claim. **See Barbour, supra**. Accordingly, we affirm.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>6/30/2021</u>