J-S01042-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSHUA YARBOUGH | : | |
| | : | |
| Appellant | : | No. 617 WDA 2025 |

Appeal from the Judgment of Sentence Entered April 24, 2025
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0005096-2021

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSHUA  YARBOUGH | : | |
| | : | |
| Appellant | : | No. 860 WDA 2025 |

Appeal from the Judgment of Sentence Entered April 24, 2025
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0000511-2025

BEFORE:   BOWES, J., PANELLA, P.J.E., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED:  February 18, 2026**

In these consolidated appeals,[1] Joshua Yarbough appeals from the April

24, 2025 aggregate judgment of sentence of 182-364 months' imprisonment,

---

[*] Former Justice specially assigned to the Superior Court.

[1] Appellant's appeals at Nos. 617 WDA 2025 and 860 WDA 2025 were consolidated by **per curiam** order of this Court on July 29, 2025.

to be followed by 1 year of probation, imposed after a jury found him guilty of aggravated assault and recklessly endangering another person ("REAP"),[2] at No. CP-02-CR-0005096-2021, and firearms not to be carried without a license and persons not to possess, use, manufacture, control, sell or transfer firearms,[3] at No. CP-02-CR-0000511-2025. After careful review, we affirm the judgment of sentence.

The trial court summarized the relevant facts of this case, as gleaned from the testimony presented at trial, as follows:

> [O]n June 13, 2021, [Pittsburgh Police Officer Jacob Botzenhart] was dispatched to Mercy Hospital to investigate a walk-in male with a gunshot wound. He spoke to the gunshot victim, Rayvar Henderson, who refused to tell Officer Botzenhart who had shot him. Henderson told the officer that he was shot in Hazelwood at Elizabeth and Gertrude Streets.
>
> City of Pittsburgh Detective Shawn Bliss of the Robbery/Homicide Division testified that he travelled to the corner of Elizabeth and Gertrude to determine whether any evidence of a crime could be recovered. He recovered no physical evidence, but he recovered video from three city cameras and two private cameras. When Detective Bliss viewed the first city video, he observed a dark blue SUV travelling on Elizabeth towards Gertrude, where Henderson said he had been shot. Detective Bliss testified that the video showed that the SUV stopped abruptly and a black man with long hair, wearing an orange shirt exited the vehicle. That man raised his arm pointing something

---

[2] 18 Pa.C.S.A. §§ 2702(a)(1) and 2705, respectively.

[3] 18 Pa.C.S.A. §§ 6106(a)(1) and 6105(a)(1), respectively.

that appeared to be a gun. The video does not show who or what the person is pointing at. Video from a camera uphill then shows the victim staggering uphill and falling to the ground. Detective Bliss obtained other video that tracked the movement of the SUV back to a convenience store around the corner. The same man wearing the same orange shirt is seen on the video getting out of the driver's seat of the same SUV and entering the store. Detective Bliss obtained video from the store, printed photos from the videos, and subsequently showed the photos to Detective [Quoc] Vo.

Russell Jones of the City of Pittsburgh Police Department Computer Crimes Unit testified that three video files had been downloaded from the City of Pittsburgh camera system. The first video was published to the jury. Detective Bliss identified Rayvar Henderson as the individual in the video on Elizabeth Street with an injured right arm. Detective Bliss testified that the video showed Henderson running away from the SUV and looking back several times in the direction of the SUV as he is running. Next, Henderson is seen collapsing to the ground and a man in the distance is seen travelling back down Gertrude.

Detective Bliss testified that he magnified the video and obtained the license plate number of the SUV, which he then ran through PennDOT. The car was registered to Appellant's mother. Later in the video, the driver of the SUV, who is wearing the orange shirt, is seen opening his door and running to the left off screen. Subsequently played video from minutes earlier that shows the man in the orange shirt exit the SUV and go into and out of a convenience store near the crime scene. After the SUV leaves the convenience store's parking lot, the video shows it moving toward the direction of the shooting. Detective Bliss testified that he never saw the SUV in person.

Detective Bliss testified that after Appellant was identified as a suspect, Detective Bliss attempted to arrest him at the airport, but Appellant fled. Ultimately, Appellant was arrested and Detective Bliss

interviewed him. Appellant told Detective Bliss that Appellant and Henderson had known each other for a long time.

Rayvar Henderson testified that he was shot in his right arm on June 13, 2021, while he was on the corner of Elizabeth and Gertrude. Henderson testified that he "can't identify the person that shot [him]."

Detective Quoc Vo testified that during the relevant period, he was a detective with the City of Pittsburgh assigned to the Violence Prevention and Intelligence Unit. He testified that he spent 6 years working in the eastern suburbs of Pittsburgh and knew those neighborhoods well. He stated that Detective Bliss contacted him to ask him to review still photos taken from the convenience store video Detective Bliss had obtained and identify the individual in the photo if possible. Detective Vo looked at the photos and testified that the man in the photos was Appellant.

The parties stipulated that on the date of the incident a court order in an unrelated matter had authorized a wiretap of Appellant's phone. The call logs were downloaded to a DVD. A selection of those intercepted calls was played to the jury. Detective Vo testified that he recognized one of the voices in several of the calls as Appellant. Detective Vo testified that a confidential informant disclosed that Appellant had a second phone. Detective Vo subsequently observed Appellant using two phones and heard him identify himself on both phones. An outgoing message from one of the phones on June 17, 2021, read, "Police are at airport waiting for me."

Trial court opinion, 7/25/25 at 3-5 (citations to notes of testimony omitted).

On January 31, 2025, Appellant proceeded to a severed jury trial before the Honorable Jill E. Rangos. On February 5, 2025, the jury found Appellant guilty of aggravated assault and REAP, at No. CP-02-CR-0005096-2021, and firearms not to be carried without a license and persons not to possess, use,

manufacture, control, sell or transfer firearms, at No. CP-02-CR-0000511-2025. On April 24, 2025, the trial court sentenced Appellant to an aggregate term of 182-364 months' imprisonment, to be followed by 1 year of probation. On April 30, 2025, Appellant filed a timely post-sentence motion, which was ultimately denied on June 24, 2025. Appellant filed notice of appeals on May 21, 2025 while his post-sentence motion was pending.[4] As noted, on July 29, 2025, Appellant's appeals at Nos. 617 WDA 2025 and 860 WDA 2025 were consolidated by **per curiam** order of this Court.[5]

Appellant raises the following issues for our review:

> [1.] Was the evidence presented at trial insufficient as a matter of law to sustain [Appellant's] guilty verdict for carrying a firearm without a license where the Commonwealth failed to produce evidence of non-licensure?
>
> [2.] Was the verdict of guilty as to [aggravated assault] and [REAP] so against the weight of the

---

[4] It is well settled in this Commonwealth that if a defendant files a timely post-sentence motion, the notice of appeal shall be filed within 30 days of the entry of the order deciding the motion. **See** Pa.R.Crim.P. 720(A)(2)(a). A trial court has 120 days to decide a post-sentence motion, and if it fails to decide the motion within that period, the motion is deemed denied by operation of law. **See** Pa.R.Crim.P. 720(B)(3)(a). When the motion is denied by operation of law, the clerk of courts shall enter an order deeming the motion denied on behalf of the trial court and serve copies on the parties. **See** Pa.R.Crim.P. 720(B)(3)(c); **see also Commonwealth v. Claffey**, 80 A.3d 780, 783 (Pa.Super. 2013) (noting that an appeal filed while post-sentence motion is pending is premature), **appeal denied**, 86 A.3d 231 (Pa. 2014). We note that a premature notice of appeal shall be treated as filed on the date the appealable order is entered. Pa.R.A.P. 905(a)(5). Accordingly, we proceed to consider the merit of Appellant's substantive issues.

[5] Appellant and the trial court have complied with Pa.R.A.P. 1925.

evidence that the trial court abused its discretion by failing to order a new trial?

[3.] Did the trial court err by allowing a witness to speculate as to the identity of a person seen in surveillance footage where the witness lacked personal knowledge of the events depicted in the footage?

Appellant's brief at 3 (citations and extraneous capitalization omitted).

**I.**

Appellant first argues that the Commonwealth presented insufficient evidence to sustain his conviction for firearms not to be carried without a license because it failed to introduce specific evidence of non-licensure. Appellant's brief at 12-14.

Our standard of review in evaluating a challenge to the sufficiency of the evidence is as follows:

> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to prove every element of the offense beyond a reasonable doubt. As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. Any question of doubt is for the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Thomas*, 988 A.2d 669, 670 (Pa.Super. 2009) (citations omitted), *appeal denied*, 4 A.3d 1054 (Pa. 2010).

- 6 -

The crime of carrying a firearm without a license is codified in Section 6106 of the Pennsylvania Uniform Firearms Act and provides, in relevant part, as follows:

> [A]ny person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

18 Pa.C.S.A. § 6106(a)(1).

"[N]on-licensure is the essential element of the crime of carrying a firearm without a license, and … the Commonwealth has the burden of establishing this element beyond a reasonable doubt." ***Commonwealth v. Woods***, 638 A.2d 1013, 1016 (Pa.Super. 1994), ***appeal denied***, 651 A.2d 537 (Pa. 1994). We further note that "[t]he Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." ***Commonwealth v. Hopkins***, 747 A.2d 910, 913 (Pa.Super. 2000) (citation omitted).

Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, we agree with the trial court that there was ample circumstantial evidence that Appellant carried a firearm without a valid and lawfully issued license. The record establishes that the jury could have reasonably inferred from the evidence presented during the severed jury trial that because Appellant was not permitted to legally possess a firearm due to

a prior conviction, he could not possibly have a valid license to do so. As the trial court explained in its opinion,

> At the severed trial, after the verdict at CP-02-CR-[00]00511-2025 was read and recorded, the Commonwealth introduced a copy of [] Appellant's certified prior conviction for possession with intent to deliver a controlled substance ("PWID"). "[U]nder 18 Pa.C.S.[A.] § 6105, one element of persons not to possess firearms is a prior conviction of a specific, enumerated offense." *Commonwealth v. Jemison*, 98 A.3d 1254, 1261 (Pa. 2014). PWID is an offense under the Controlled Substance, Drug, Device and Cosmetic Act, which makes Appellant ineligible to obtain a license. Since the Commonwealth established that Appellant could not obtain a license, it logically follows that Appellant could not have a valid concealed carry license and Appellant's first issue is without merit.

Trial court opinion, 7/25/25 at 7 (citation to notes of testimony and extraneous capitalization omitted). Based on the foregoing, Appellant's sufficiency claim must fail.

**II.**

Appellant next argues that the verdicts for aggravated assault and REAP were against the weight of the evidence. Appellant's brief at 14-17.

This Court has recognized that "a true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." *Commonwealth v. Miller*, 172 A.3d 632, 643 (Pa.Super. 2017) (citation omitted), *appeal denied*, 183 A.3d 970 (Pa. 2018). "An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court." *Commonwealth v. Galvin*,

985 A.2d 783, 793 (Pa. 2009) (citation omitted), *cert. denied*, 559 U.S. 1051

(2010).

> [W]here the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Shaffer*, 40 A.3d 1250, 1253 (Pa.Super. 2012) (citation

omitted).

> Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.
>
> This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained[,] [t]he term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (citations and emphasis omitted).

Upon review, we find that the trial court properly exercised its discretion in concluding that the jury's verdict was not against the weight of the evidence. *See* trial court opinion, 7/25/25 at 7-8. "[T]he trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Commonwealth v. Andrulewicz*, 911 A.2d 162, 165 (Pa.Super. 2006) (citation omitted), *appeal denied*, 926 A.2d 972 (Pa. 2007).

Here, the jury heard ample testimony at trial from six different Commonwealth witnesses, including five Pittsburgh Police Department personnel and the shooting victim, Henderson. The jury also had the benefit of viewing multiple surveillance camara videos from before and after the shooting. The jury clearly found the testimony and evidence presented by the Commonwealth at trial credible, and elected not to believe Appellant's version of the events. Appellant essentially asks us to reassess the factfinder's credibility determinations. We are precluded from reweighing the evidence and substituting our judgment for that of the factfinder. *Clay*, 64 A.3d at 1055. Accordingly, Appellant's weight claim must fail.

**III.**

In his final claim, Appellant argues that the trial court abused its discretion in permitting Detective Vo to identify Appellant in still photographs

taken from video surveillance camera footage at Go Go's convenience store shortly before the shooting occurred.  Appellant's brief at 18-19.

"[T]he admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion."  *Commonwealth v. Fransen*, 42 A.3d 1100, 1106 (Pa.Super. 2012) (citation omitted), *appeal denied*, 76 A.3d 538 (Pa. 2013). "An abuse of discretion is not merely an error in judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record."  *Commonwealth v. Belknap*, 105 A.3d 7, 10 (Pa.Super. 2014) (citation omitted), *appeal denied*, 117 A.3d 294 (Pa. 2015).

"Admissibility depends on relevance and probative value. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding a material fact."  *Commonwealth v. Drumheller*, 808 A.2d 893, 904 (Pa. 2002) (citation omitted), *cert. denied*, 539 U.S. 919 (2003); *see also* Pa.R.E. 401, 402.

Pennsylvania Rule of Evidence 701 provides that the lay opinion of a witness is admissible if the opinion is:  rationally based on the perception of the witness; (2) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue; and (3) not based on "scientific, technical,

or other specialized knowledge" within the scope of Rule 702. Pa.R.E. 701. Pursuant to Pennsylvania Rule of Evidence 602, "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony." Pa.R.E. 602.

Instantly, Detective Vo reviewed the still photographs taken from video surveillance camera footage at Go Go's convenience store shortly before the shooting and positively identified Appellant as the individual in the orange shirt. Notes of testimony, 2/3/25 at 56. Our review of the record establishes that Detective Vo's identification of Appellant was rationally based on his perception and his personal knowledge of Appellant. Detective Vo testified that at the time of the shooting, he was employed as a detective with the City of Pittsburgh assigned to the Violence Prevention and Intelligence Unit. *Id.* at 53-54. Detective Vo further testified that he was familiar with Appellant from his six years of working in Zone 4 in Pittsburgh, which includes Hazelwood. *Id.* 55-56

This Court has long upheld decisions to allow police detectives to offer lay opinion testimony. *See e.g.*, *Commonwealth v. Palmer*, 192 A.3d 85, 100-101 (Pa.Super. 2018) (holding the admission of detective's lay opinion testimony identifying appellant as shooter in surveillance videos was proper because it was based on his perceptions and was helpful in allowing jury to reach clear understanding), *appeal denied*, 204 A.3d 924 (Pa. 2019).

Based on our review, we discern no abuse of discretion on the part of the trial court in allowing Detective Vo to identify Appellant as the person depicted in the video surveillance stills, based upon his perception and his personal knowledge.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE:  2/18/2026